## STATE EX REL. AVENIUS v. TIDBALL, DISTRICT JUDGE, ET AL.*

(No. 1420; January 4, 1927; 252 Pac. 499.)

RECEIVERS—GROUNDS FOR APPOINTMENT—PROHIBITION—EXHAUSTION OF LEGAL REMEDIES—NOTICE—JURISDICTIONAL OBJECTIONS—PLEADING—WATERS AND WATER COURSES—CORPORATIONS—JUDICIAL SALES—INTERVENTION — PARTIES — MORTGAGES — TRUSTEE REPRESENTS BONDHOLDERS.

1. Under Comp. St. 1920, §§ 6081, 6184, judgment creditor may under certain circumstances have receiver appointed to take charge of property of judgment debtor for purpose of enabling him to enforce judgment.

2. Under Comp. St. §§ 6081, 6184, judgment creditor may have receiver appointed over debtor corporation, though it is akin to insolvency proceeding and though it results in dissolution of corporation.

3. Though insolvency alone does not ordinarily warrant appointment of receiver, where other grounds for preserving property for creditors appear, receiver will be appointed.

4. In absence of showing on what grounds receiver was appointed, Supreme Court will assume that sufficient legal grounds were shown to trial court to justify appointment.

5. Objection to appointment of receiver that judgment creditor had not exhausted all of his remedies at law before appointment may be waived in proceedings to prohibit enforcement of judgment appointing receiver involving only jurisdictional questions, and, in absence of showing to contrary, objection is assumed to have been waived.

6. Waiver of objection to appointment of receiver that judgment creditor had not previously exhausted all his legal remedies applies only to parties before court.

7. Absence of notice to principal creditor of application for appointment of receiver was not jurisdictional when its lien was not then sought to be affected.

8. Public notice of proposed appointment of receiver over property of debtor is not jurisdictional requirement to appointment, where notice is given to party in possession of property over which receiver is appointed.

9.  In original proceedings to prohibit court from carrying into effect judgment appointing receiver over property of debtor, only jurisdictional objections to appointment of receiver can be considered.

10. Whether creditor applying for receiver will ultimately realize anything on his claim is not a jurisdictional factor in connection with appointment of receiver, as respects prohibition.

11. Receiver may be appointed to conduct affairs of private corporation as going concern when shown to be necessary, and, in absence of showing to the contrary, Supreme Court assumes that showing of necessity was made to court appointing receiver.

12. Allegation that company over which receiver was appointed is private corporation cannot prevail over facts appearing in record, and is deemed to be merely conclusion of pleader.

13. Corporation organized under Comp. St. Wyo. 1920, § 775, and U. S. Comp. St. § 4685, for purpose of reclaiming lands patented by state from United States government, and held by state for benefit of public desiring to settle on lands reclaimed, is not strictly private corporation, and court had jurisdiction on company becoming insolvent to appoint receiver over its property as going concern on petition by judgment creditor.

14. In proceedings to sell property of irrigation company to satisfy judgments, it is assumed that assessments against lands provided for by Comp. St. 1920, § 792, were collected but were insufficient to pay judgments and expenses, and where company remained liable for half of claims itself, it could not be said that no necessity for sale of property was shown.

15. To justify sale of property of corporation free and clear of lien, party holding lien must have notice, and sale must be necessary for judgment creditor, who would derive some benefit from sale.

16. Where court found that trust deed by irrigation company was first lien on all its assets and that bonded indebtedness of company was greater than assets, no necessity existed for sale of property free of lien to satisfy judgment of creditor, since creditor could receive no benefit therefrom.

17. Where receivership proceedings are pending against irrigation company, user of water under irrigation works of company and one of owners of land under reclamation project was properly permitted to intervene to protect contracts with company without necessity of bringing separate action.

18. Whether party shall be permitted to intervene in receivership proceedings is within discretion of court.

19. Where bondholders under trust deed are numerous, making it impracticable to make them all parties to receivership proceedings against company making trust deed, trustee should be held to represent bondholders, and service of notice or summons on trustee is sufficient.

20. Failure of trustee to foreclose trust deed does not show abandonment of trust nor indicate that trustee's interests are antagonistic to interests of bondholders in receivership proceeding over company giving trust deed.

21. Where creditors and bondholders of company were before court by service of notice on trustee of trust deed, court had jurisdiction to determine whether property of insolvent company placed in hands of receiver should be sold as going concern free of incumbrances to satisfy claims of judgment creditors, though ordinarily receiver has no power to sell.

22. Generally, existing liens and incumbrances are not affected by appointment of receiver over property, and receiver cannot ordinarily sell such property free from incumbrances unless necessity therefor is shown.

23. Sale of franchises and property of insolvent irrigation company in hands of receiver as a going concern, contracts to be carried out by purchaser, *held* shown to be necessary to protect settlers on land and bondholders under deed of trust made by company.

*See Headnotes: (1, 2) 14 a CJ p. 957 n. 93 New; 34 Cyc. p. 39 n. 16 New; p. 47 n. 58, 59; p. 78 n. 76. (3-5) 14 a CJ p. 957 n. 96; p. 962 n. 38; 32 Cyc. p. 630 n. 3; 34 Cyc. p. 38 n. 12. (6-8) 14 a CJ p. 962 n. 38; 34 Cyc. p. 117 n. 79; p. 118 n. 79; p. 121 n. 89. (9, 10) 32 Cyc. p. 629 n. 1; p. 630 n. 2. (11-13) 14 a CJ p. 1005 n. 57 New; 31 Cyc. p. 51 n. 71; p. 65 n. 42 New; 32 Cyc. p. 630 n. 3; 40 Cyc. p. 825 n. 61, 64 New. (14) 40 Cyc. p. 825 n. 64 New. (15) 14 a CJ p. 1008 n. 21; 41 CJ p. 944 n. 87, 88. (16) 14 a CJ p. 1008 n. 21. (17, 18) 14 a CJ p. 966 n. 97 New; 31 Cyc. p. 519 n. 16; 40 Cyc. p. 825 n. 64 New. (19, 20) 41 CJ p. 606 n. 41; 27 Cyc. p. 1567

n. 7; 39 Cyc. p. 455 n. 7.  (21) 14 a CJ p. 1006 n. 80, 82; p. 1008 n. 21; 34 Cyc. p. 310 n. 35, 36.  (22) 34 Cyc. p. 193 n. 88; p. 320 n. 24, 25, 26.  (23) 40 Cyc. p. 825 n. 64 New.

Original petition for a writ of prohibition by the State, on the relation of Rudolph Avenius, against V. J. Tidball, Judge of the District Court, Second Judicial District, and another.

*W. A. Muir,* for plaintiff.

The lien created by the trust deed and the bonds issued thereunder, given to the Chicago Title and Trust Company, as trustee, by the Eden Irrigation and Land Company, is paramount to the receivership proceeding; the Eden Company is a private corporation; the judgment of Evers Brothers is inferior to the lien of the trust deed; the Receiver is without power to sell the property clear of the lien created by the trust deed; the court was without jurisdiction of the bondholders; Carey Act projects are controlled by the State Land Board; 770-783 C. S.; canals of this class are not common carriers, within the meaning of Art. 10, Sec. 7, of the Constitution; the Public Service Commission has no jurisdiction over Carey Act canals; a court of equity cannot appoint a Receiver to hinder the demands of creditors; 34 Cyc. 30; the Eden Company is not a quasi public corporation; Commissioner v. McCrea, (Utah) 235 Pac. 580; Bank v. Company, 64 Pac. 212.

*T. S. Taliaferro, Jr.,* and *Arthur-Lee Taliaferro,* for defendants.

The Eden Company is a public utility and a common carrier; Art. 10, Sec. 7, Const.  Water is the property of the State; Art. 8, Sec. 1, Const.  Irrigation works are public utilities; 5453 C. S.  The Utah case of Commissioner v. McCrea is not in point, nor is the Colorado case of Bank v. Lamar, cited by petitioner; the court had jurisdiction to order the sale of the property clear of the lien of the

trust deed; 14 a C. J. 1008; Pilliod v. Ry. Co., (Ind.) 91 N. E. 829; Reilly v. Co., (N. J.) 44 Atl. 161; 34 Enc. L. & P. 310; Bank v. Shedd, 121 U. S. 74; 30 L. Ed. 877; Bank v. Co., (Va.) 56 S. E. 158. Service by publication conferred jurisdiction; 5736 C. S.; Snavely v. Co., (Kan.) 12 Pac. 522. The demurrer should be sustained.

BLUME, Chief Justice.

This is an original petition for a writ of prohibition. The facts in brief are as follows: The Eden Irrigation and Land Company, hereinafter called the company, is a corporation which was organized under the laws of the State of Wyoming, for the purpose of reclaiming certain lands in Sweetwater County, Wyoming, under the so-called Carey Act. The nature of such corporation will be more fully disclosed by considering the legislation in connection with that Act. Congress thereby (Compiled Statutes 1901, pages 1554 to 1556) provided for the reclamation by irrigation of desert lands situated in various states and territories. Under the provisions of the Act, the state may make an application to the Secretary of the Interior to segregate certain desert lands from the body of the public domain. For that purpose a map and plans showing the mode of the irrigation must be submitted, and, if approved, lands will be reserved and a patent therefor is ultimately issued to the state or its assigns. The legislature of this state accepted the benefits of the said Act of Congress. By section 775, W. C. S. 1920, it is provided that a company or corporation, that desires to construct irrigation works to reclaim lands under the Carey Act, must, in writing, request the Board of Land Commissioners to select the land to be reclaimed, must propose to construct the irrigation works necessary for such reclamation and state the source of the water supply, the location and dimensions of the proposed works and the price and terms at which perpetual water rights will be sold to settlers on the lands to be reclaimed. Under other sections of the

statute, an application for a permit for a water right in connection with such reclamation must be filed with the State Engineer. The proposal above mentioned is investigated, and, if approved, an application is directed to be made to the Government of the United States for patents for such lands. Upon the withdrawal of the land by the Department of the Interior, the State Board of Land Commissioners may enter into a contract with said applicants submitting the proposal aforesaid, which contract must, among other things, specify the location, dimensions, character and estimate of the cost of the proposed irrigation work, and the price and the terms for which perpetual rights therein will be sold to the settlers upon said lands. The land itself is not sold or granted to the company constructing such irrigation works, but may be filed upon and occupied by individual settlers upon paying the sum of fifty cents per acre—a nominal sum to cover expenses—and upon making proof that they have acquired a perpetual water right. That right is sold to the settlers by such company, and the company, in turn, is granted a first and prior lien for any deferred payment therefor on the right itself, and upon the land for which the water is used. A more detailed account of the provisions of law relating to such companies and the Carey Act is found in the case of Canal Co. v. Hardesty M. Co., 31 Wyo. 182, 224 Pac. 853.

The company, aforesaid, as shown by the publicly printed document issued by the Commissioner of Public Lands of this state, acquired certain water rights in Sweetwater County, Wyoming, to irrigate approximately 28,000 acres of land set apart by the Government of the United States to the State, as contemplated by the Carey Act. Patents for this land have been issued by the United States Government to this state. Only approximately 14,000 acres of this land, however, have been filed upon by settlers, and the water rights sufficient to irrigate the remainder of

the 28,000 acres aforesaid have not been disposed of and are still owned by the company, though intended, ultimately, to pass into the hands of settlers.

On the 1st of January, 1907, the company made and executed a trust deed or mortgage to the Chicago Title and Trust Company, a corporation of the State of Illinois, as trustee, upon all of the property of the company, including its water rights, irrigation works and the sums of money due and owing from the various settlers for water rights sold or to be sold to them, in order to secure the payment of bonds in the principal sum of $700,000, such bonds being numbered from 1 to 840 inclusively. This mortgage or trust deed was duly filed of record in Sweetwater County, Wyoming, on February 20, 1907. On September 11, 1922, Evers Brothers recovered a judgment against the company in the sum of $5251. On the same day, presumably upon the petition of Evers Brothers, and by the consent or without objection of the company, the court appointed a receiver of the company, who qualified within a few days thereafter, took charge of all of the property of the company, and has managed it up to this time. On August 14, 1926, the receiver filed a petition for further directions by the court, and on the same day the Big Sandy Live Stock Company filed a petition of intervention in the receivership matter. Both the receiver and intervener prayed the court to make the Chicago Title and Trust Company a party to the proceeding and to authorize the sale of all of the property of the Eden Irrigation and Land Company, either at public or private sale, as might be most advantageous, and clear of the lien of the said trust deed or mortgage, and to distribute the proceeds of the sale among the bondholders and other creditors of the company. On August 31, 1926, the court made and entered an order directing the Chicago Title and Trust Company to be made a party defendant in the proceeding, and that summons be served upon it. Service of

summons was duly made, as directed, on September 8, 1926. On October 14, 1926, the court entered a judgment in said matter, finding that the company is a public service corporation of the State of Wyoming; that it conveys water for power purposes and for the irrigation of lands of third parties, and for settlers on the reclamation project hereinbefore mentioned; that the irrigation works, reservoirs, canals and headgates of the company are deteriorating and out of repair; that this is resulting in irreparable damage to the property of the intervenor and other settlers on said reclamation project; that the company is no longer able to perform its contract with said settlers; that it has failed and refused, and still fails and refuses, to repair such irrigation works or to finance the irrigation company so that it may continue as a going concern; that it is hopelessly insolvent and its affairs can no longer be managed by the receiver as a going concern, and that it is necessary to sell its franchise and assets, clear of all liens and incumbrances; that the majority of the bondholders have consented to such sale; that it is to the best interests of all the parties interested to make such sale; that unless that is made, the company will forfeit its rights of way and its water rights; that the mortgage or trust deed to the Chicago Title and Trust Company is a first lien upon the property of the Eden Irrigation and Land Company, and that the bonded indebtedness secured thereby is greater than the assets of the company. The court, thereupon, directed that the property of the company be sold as a unit and as a going concern, free and clear of the lien of said mortgage or trust deed, to one George H. Ennis, in accordance with the terms of the contract already entered into, the proceeds of the sale to be subject to the terms of said lien and to be hereafter disbursed and paid over to the proper parties. The relator herein, one of the bondholders under said trust deed, appeared before the court at the time of the rendition of said

judgment and objected to the sale of the property as aforesaid, and claimed that the court had no jurisdiction to order a sale of the property of the company free and clear of said lien. The petition in the present proceeding was filed on October 18, 1926, in which the relator makes the same claim which he made in the court below, and asks this court to prohibit the lower court from carrying its judgment aforesaid into effect. A general demurrer was filed to the petition herein and has been argued and submitted.

1. Section 6081, W. C. S. 1920, provides that:

"The judge may, by order, appoint the sheriff of the proper county, or other suitable person, a receiver of the property of the judgment debtor."

And under section 6184, a receiver may be appointed "in all other cases where receivers have heretofore been appointed by the usages of courts of equity." While receivers are not appointed except when necessary, yet there is no doubt that a judgment creditor is, under certain circumstances, entitled to have a receiver take charge of the property of a judgment debtor, for the purpose of enabling him to enforce his judgment. Clark on Receivers, sections 93, 197-200; High on Receivers, sections 399 to 401. Corporations are no exceptions to the rule, even though a receivership may be akin to an insolvency proceeding, and even though it may result in the virtual dissolution of the corporation. Clark, supra, sec. 240. Some of the authorities seem to indicate that a judgment creditor, at least where he has exhausted his remedies at law, is entitled, as a matter of right, to the appointment of a receiver of the property of the debtor corporation. John W. Cooney Co. v. Hotel Co., 11 Del. Ch. 286; 101 Atl. 879,885; High on Receivers, sec. 298. In any event, while insolvency alone may not ordinarily warrant the appoint-

ment of a receiver, yet where, in addition to the insol-
vency, other grounds exist which make it necessary that
some disinterested party should take charge of the prop-
erty in order to preserve it for creditors and other inter-
ested parties, courts will not hesitate to appoint a receiver
for that purpose.   Clark, supra, 241; Fletcher, Encyc. of
Corporations, sec. 5252; Brown v. Iron Co., 134 U. S. 530;
10 Sup. Ct. 604; 33 L. Ed. 1021.   The pleadings in the case
below have not in any manner been brought to this court,
and are not before us, and hence it does not appear upon
what grounds the receiver in the present case was ap-
pointed, and in the absence of a showing in regard thereto,
we must assume that sufficient legal grounds were shown
to the court below to justify it in making such appoint-
ment.   True, it sufficiently appears from the record before
us that the judgment creditor had not exhausted all of his
remedies at law before the receiver was appointed; but
that objection is one that may be waived.   Clark, supra,
sections 198 and 242; Matter of Reisenberg, 208 U. S. 90,
28 Sup. Ct. 219, 52 L. Ed. 403.   And under the presump-
tion of the regularity of the proceedings in the court
below, we must, in the absence of a showing to the con-
trary, assume that the objection was waived in this case.
The waiver applies, of course, only to the parties before
the court, and the Chicago Title and Trust Company, the
principal creditor, had not then been made a party to the
case, and had not been served with notice.   Western Ac-
ceptance Co. v. Simmons Co., 71 Colo. 127, 203 Pac. 1096.
But we do not think that the absence of notice to that
company at that time was jurisdictional, when its lien was
not at that time sought to be affected.   It was said in
Hutchison v. American Palace Co., (C. C. 104 Fed. 182,
that no receiver should ordinarily be appointed until after
public notice of the proposed appointment has been given.
That doubtless is the better practice, at least in many
cases, but it is not a jurisdictional requirement in making

the appointment, at least in cases where notice of the proposed appointment is given to the party in possession of the property of which a receiver is appointed, for the reason, as stated in some of the cases, that creditors generally have the opportunity to protect themselves, by subsequently appearing in the proceedings and making their objections. Ripy v. Lumber Co., 48 Tex. Civ. App. 311, 106 S. W. 474; In Re Eckhard Mfg. Co., 114 La. 119, 38 So. 78; Oil City Iron Works v. Oil & Pipe Line Co., 115 La. 265, 38 So. 787; see Chambers v. Barker, 2 Neb. Unoff. 526, 89 N. W. 388; 34 Cyc. 117; Fletcher, supra, sec. 5274. In fact it has been held, though there is conflict in the authorities, that the appointment of a receiver without any notice whatever is merely voidable, but not void. Yount v. Fagin, (Tex. Civ. App.) 244 S. W. 1036; Weems v. Lathrop, 42 Tex. 207, 34 Cyc. 121; see High, on Receivers, sections 114-116; Fletcher, supra, sec. 5274. In the case at bar, the party in possession of the property had notice and neither the objection that the judgment creditor had not exhausted his remedies at law, nor that the Chicago Title and Trust Company was given no notice at that time can be held to be available in this proceeding in which only jurisdictional objections can be considered. And we may say further that whether or not the creditor who applies for the receiver will ultimately realize anything on his claim cannot be held to be a necessary criterion of, and jurisdictional factor in connection with, the appointment of such receiver, for the reason that it will be impossible or impracticable in many cases to determine that point in the first place.

The receiver was appointed to conduct the affairs of the company as a going concern. It is generally held that this should not ordinarily be done in the case of a strictly private corporation. The effect thereof is frequently but a declaration of a moratorium against creditors. It is not ordinarily the business of the court to manage, through a

receiver, a concern in which the public has no interest. Fletcher, supra, sec. 5238. It is alleged in the petition herein that the Eden Irrigation and Land Company is a private corporation, and it is urged that this is admitted by the demurrer, and that hence the court had no such power in this case as it would have had in the case of a public utility corporation or other quasi public corporation. But the court is not without jurisdiction to appoint a receiver for such purposes even in the case of a private corporation, where that is shown to be necessary, and if the Eden Irrigation and Land Company were assumed to be such, we must presume, in the absence of a showing to the contrary, that the proper showing of necessity was made to the court. However that may be, the allegation that the company is a private corporation cannot prevail over the actual facts as they appear in the record before us, and must be deemed to be merely a conclusion of the pleader. Oldroyd v. McCrea, 65 Utah 142, 235 Pac. 580, 583, 40 A. L. R. 230. Without deciding as to whether or not the company in question was a quasi public or public utility corporation, it is at least one sui generis, and can hardly be called a strictly private corporation, until at least a time when its contracts with the settlers on the reclamation project and with the state have been fulfilled. The company carries out its purposes pursuant to a contract made directly with the state. The latter obtains patents from the Government of the United States for lands under the reclamation project. The company receives no benefit from its expenditures except by furnishing water rights for the lands so patented to the state or to its assignees. The state does not hold this land in a proprietary capacity, but solely in the interest and for the benefit of those members of the public at large who are willing to settle upon the lands reclaimed, and the state, representing the public, is interested in such settlement. The company, as found by the judgment of the

lower court, is insolvent and unable to carry out the purposes for which it was organized, and doubtless was so at the time of the appointment of the receiver. Approximately one-half of its water and other rights have not been sold, and one-half of the land, set apart for its benefit by the United States Government and by the State, still awaits settlers, before the intent of the contract made with said company by the state can be said to be fulfilled. In view of these facts, we cannot too narrowly limit the powers of the court in appointing the receiver, and we must, accordingly, conclude, on this branch of the case, that the court had power and jurisdiction in making the original order appointing a receiver.

2. It is urged that no necessity existed to sell the property and rights of the company, or at least to sell it free and clear of the mortgage and trust deed hereinbefore mentioned. It is contended that under section 792, W. C. S. 1920, provision is made for annual assessments against lands settled upon under the Carey Act for the purpose of maintaining the ditches and water rights in connection therewith; that the claim of Evers Brothers is for repair work thereon, and that it has not been shown, as it should have been, that Evers Brothers could not have had their judgment satisfied through assessments so levied. We cannot, however, assume, even if the point is material, which we doubt, as hereinafter pointed out, that the receiver in this case was negligent and failed to make and collect the assessments mentioned, and must rather assume, in the absence of a showing to the contrary, that these collections were made, but were insufficient in amount to pay the judgment and other necessary expenses in connection with the company's irrigation works. And it must be borne in mind that the company still owns half of its rights, which have not been sold to settlers, and we think we may rightly assume that the settlers would not be responsible for the total cost of maintenance of such

irrigation works, but only for their proper proportion, and that the company would still be liable for approximately one-half thereof.

Of course, in order that a court of equity may be justified in making a sale of the property of the company, particularly a sale free and clear of a lien, not only must the party holding the lien have notice, but such sale must also be necessary, and it could not be said to be necessary so far as Evers Brothers are concerned, unless they would derive some benefit from such sale. It appears, from the allegations of the petition in the present case, that the mortgage and trust deed hereinbefore mentioned secured the sum of $700,000, of which there is still due the sum of $634,000. It was stated upon oral argument herein that the court retained the right to pay over the proceeds of the sale to the bondholders who might show themselves to be entitled thereto, and that it would probably appear upon such showing that many of the bonds could not be paid because barred by the statute of limitations. We might say, however, without deciding the point, that it is generally held that a statute of limitations governing acts or suits to foreclose mortgages has no application to proceedings of foreclosure under a power of sale in a mortgage or trust deed. 41 C. J. 944. The trust deed and mortgage in the case at bar appears to provide for the power of sale by the trustee, and it would seem that the rights of bondholders in this respect could hardly be curtailed by the court in a proceeding where they are compelled by it to file their claim with it or with the receiver. In any event, the court, in its judgment, found that the trust deed aforesaid "is the first and only lien upon the franchises, reservoirs, canals, headgates and irrigation works, and assets of said Eden Irrigation and Land Company," and "that said bonded indebtedness is much greater than the assets of the defendant, Eden Irrigation and Land Company." It would, accordingly, seem, from

the facts as now before us, that no necessity existed for selling the property of said company in order to satisfy the judgment of Evers Brothers, because, apparently, they could receive no benefit therefrom.

It appears further, however, that the Big Sandy Live Stock Company intervened in the proceedings and was permitted to do so. It is a user of water under the irrigation works of the company and one of the owners of land under said reclamation project. The petition of intervention is not before us, but we must assume that sufficient facts were before the court to justify it in rendering its judgment of October 14, 1926. And it clearly appears from these findings that said intervener, and other settlers under said reclamation project, are materially interested in having the property of the company sold as a going concern in order that they may not be ruined, but may have the contracts with the company carried out. We see no reason why the filing of the petition of intervention was not proper, or why it should have been necessary for the intervener to have brought a separate action, rather than to make its claims in the receivership proceeding already legally pending. It is generally held that whether or not a party shall be permitted to intervene in a receivership proceeding, is in the discretion of the court. In the case of Webber v. Naltner, 11 Ohio Dec. 401, it was held that any party may come in and have his claim adjudicated in a receivership proceeding, upon petition or motion. In the case of Idaho Fruit Co. v. Great Western Beet Sugar Co., 17 Idaho 273, 105 Pac. 562, the court held that a party substantially situated as the intervener herein, has the right to have a receiver appointed for an irrigation company. In the case of American Trust Co. v. Ice Co., 133 La. 247, 62 So. 664, it was held that the court had authority to enlarge the powers of a receiver and order the sale of the property. In the case of Childs v. Neitzel, 26 Idaho 116, 141 Pac. 77, land owners situated

substantially as the intervener herein were permitted to intervene in a receivership proceeding and their rights were passed upon by the court, although the point of the right of intervention is not discussed.  In Pilliod v. Railroad Co., 46 Ind. App. 719, 91 N. E. 829, the court said, on a point similar to that involved here:

"Here applicants insist that the court possessed no jurisdiction in this case, because the petition which invoked this jurisdiction of the court was not filed as an original suit brought by creditors of the corporation.  We think it utterly immaterial whether the petition was filed as an independent suit or filed, as was done in this case, as an intervening petition in a case already pending in court. The petition of the creditors presented the facts which invoked the jurisdiction.  The parties to be affected by the order of the court were in court appearing to the petition as much as though the suit had been originally begun by the petitioners as an independent proceeding.  The most that could be said about the proceeding in this respect would be that it was irregular and we do not hold that it is subject to this criticism.  The court possessed jurisdiction over the subject matter and jurisdiction over the parties, and therefore its decree was binding upon them all."

So in the case at bar, the parties interested in the sale of the property were before the court.  The Chicago Title and Trust Company was duly served with summons, but failed to appear and made default.  It is claimed that service upon the trustee for the bondholders was not sufficient, but that the bondholders themselves should have been served with notice.  The petition in the present case alleges that the plaintiff brings the case on behalf of all of the bondholders, because they are too numerous to be all brought into court.  If that is true now, it was probably just as true at the time when the court made an order

to have summons served upon the Chicago Title and Trust Company for and on behalf of all of the bondholders. We referred to the point now in question in the case of Clarke v. Shoshoni Lumber Co., 31 Wyo. 205, 224 Pac. 845. We think that the general rule is, and should be, that where the bondholders under a trust deed, made to a trustee, as here, are numerous so as to make it difficult or impracticable to make them all parties, the trustee should be held to represent the bondholders, and that it is sufficient to serve notice or summons upon such trustee and make him or it a party to the action or proceeding. 39 Cyc. 455, 27 Cyc. 1567; Beech on Trusts and Trustees, sec. 754; Wiltsie on Mortgage Foreclosures, sec. 168; Merz v. Mehner, 57 Wash. 324, 106 Pac. 1118; Ogden v. Spherott, (Tex. Civ. App.) 236 S. W. 143. We are cited to the case of Belknap Sav. Bank v. Land & Canal Co., 28 Colo. 326, 64 Pac. 212, where it is stated that service upon a trustee who has abandoned his trust and whose interests are antagonistic to the bondholders is not sufficient. The action in that case was by one of the bondholders to foreclose a trust deed, and the ground assigned in the complaint as constituting the right of plaintiff to sue was that the interests of the trustee were antagonistic to those of the bondholders. The court says that by reasonable diligence all of the bondholders could have been found. We have no such case here. The fact that the trustee in the case at bar had not previously proceeded to foreclose the trust deed given to it does not show that it had abandoned its trust, and in no manner indicates that its interests were antagonistic to the interests of the bondholders herein.

The parties, accordingly, being before the court, the court had the right and jurisdiction to determine whether or not the property of the company should be sold. Ordinarily, a receiver is a mere stake-holder and has no power to sell, and a sale must, as hereinbefore stated, be necessary. 34 Cyc. 310. But there are cases in which it

is proper that a sale be made. In the case of Henry v. Bankers Trust Co., (Tex. Civ. App.) 206 S. W. 560, 573, the court held that the property of an insolvent irrigation company, under receivership, might be sold by the court on its own motion. We need not determine whether that is good law or not, but the court, in any event, had the right to determine, upon a showing made, whether such property should be sold. Thus it was said in the case of State v. Southern, 218 Mo. App. 266, 267 S. W. 423, as follows:

"Where property is in the hands of a receiver which belongs to a going business concern and is losing money or causing a loss thereof, there is no doubt that the receiver, under a proper finding and order, made on an application for an order of sale and hearing thereon, has power to sell the property in order to preserve the best interests of all concerned, although no request was made for a sale in the petition for the receivership. It is true, a receiver that acts as a mere stakeholder to preserve the assets of the corporation during the pendency of litigation usually has no power to sell the property of the corporation. 34 Cyc. 310; Matthews v. Cooper, 66 Hun 626, 21 N. Y. S. 71. But this receiver was appointed to manage the affairs of the corporation, and a sale of a part of the assets of a corporation, under an order of court on an application for an order of sale and a hearing, may often be the very best way of preserving the rest of the assets of the corporation for the benefit of the owners thereof."

The court, we think, had the further right to determine as to whether or not the property should be sold free and clear of incumbrances. Generally, existing liens and incumbrances are in no way affected by the appointment of a receiver of the property, and the receiver cannot, ordinarily, sell such property free from incumbrances. Nevertheless, cases exist where that becomes necessary, and

where the proper facts exist, and the lienholders have notice, the court has power and jurisdiction to order that to be done. 34 Cyc. 320. It must be remembered that in the case at bar the court did not displace the lien of the Chicago Title and Trust Company, but simply ordered it to be converted into another form. Hence the case of Oldroyd v. McCrea, 65 Utah 142, 235 Pac. 580, 40 A. L. R. 230, has, in no event, any application in this case. The right of the court to sell property in a receivership proceeding, free and clear of incumbrances, was recognized as early as 1868, in the case of DeVisser v. Blackstone, 6 Blatchford, 235 Fed. Cas. No. 3840. The right was also clearly recognized in the case of Martin v. Vanlaningham, 189 N. Car. 656, 127 S. E. 695, where the court said, among other things:

"We see no reason why, upon the facts of the present record, a valid order of confirmation could not be entered at term, directing the purchase money to be paid into court, and to remain subject to the same liens and equalities of all parties in interest, as was the property before the sale, to be disposed of under the direction of the court."

In the case of State ex rel. v. Superior Court, 128 Wash. 253, 222 Pac. 492, 35 A. L. R. 252, a case involving the property of a private corporation, the proceedings similar to those in the case at bar were treated as insolvency proceedings, and the court held that its property involved might be sold free and clear of a judgment lien. Answering the contention that it is not within the power of the court to relieve the property from such lien and make it a charge upon another fund, even though the fund be one derived from the sale of property, the court said:

"But the statute cited has reference to normal conditions—conditions where the interests involved are those between the debtor and the creditor—not to those where the insolvency of the debtor intervenes and the court is called upon to conserve the property so as to make it go as far as it will in the payment of the insolvent's obligations. Unquestionably, in insolvency proceedings the court has power to direct a sale of the insolvent's property, and if the court, in the exercise of its sound discretion, finds it to be to the best interests of all concerned that the real property be sold free from incumbrances, there would seem to be no substantial reason why the court may not so direct. To do so is but to carry out the purpose of the insolvency proceedings. It is to conserve the property for the benefit of the general creditors, and it works no injury to the judgment creditor if, as in this instance, his right of lien is made a charge upon proceeds to be derived from the sale."

In the case of Pilliod v. Railroad Co., supra, the court, among other things said:

"When the court entertained the petition of the general creditors for the enlargement of the powers of the receiver, it took into its jurisdiction all of the title of the property of the insolvent corporation. And it is this title which is sold by the receiver. And in proceedings of this character, the court has the power and authority to direct the sale in any manner it may see proper. It may sell the property of an insolvent corporation, subject to liens that are upon it, or, if it has the lienholders before it and has jurisdiction over them, it may order the property sold by its officers discharged from the lien, as was done in this case, and direct the distribution of the proceeds in accordance with the rights of the parties."

See also the case of Bank v. Trigg Co., 106 Va. 357, 56 S. E. 158, 34 Cyc. 420; Tardy's Smith on Receivers, page 1827.

We think it sufficiently appears in the case that it was necessary to sell the franchises, property and rights of the Eden Irrigation and Land Company as a going concern, so that the purchaser may carry out the intent and purpose for which that company was organized, and we assume, nothing appearing to the contrary, that the proposed purchaser has agreed to take over such property and rights with the understanding that he must fully carry out the contracts with the settlers and the State; such sale would seem to be necessary not only to protect the settlers and keep them from ruin, but also to save as much as possible for the bondholders under the trust deed heretofore mentioned. It would seem to be clear, accordingly, that the court had full power and jurisdiction to make the order complained of, and the demurrer filed herein must accordingly be sustained.

POTTER, J., and KIMBALL, J., concur.