## FIRST NATIONAL BANK OF GREEN RIVER v. ENNIS, ET AL.

(No. 1734; September 13, 1932; 14 Pac. (2d) 201)

498

For the plaintiff and appellant there was a brief and also oral argument by *Mr. T. S. Taliaferro, Jr.,* of Rock Springs, Wyoming.

For the defendants and respondents there was a brief and oral argument by *W. A. Muir*, of Rock Springs, Wyoming.

500

RINER, Justice.

The First National Bank of Green River, a corporation organized under Federal law to transact a banking business, brought an action in the District Court of Sweet-

water County to exact an accounting from George H. Ennis and Rock Springs Water Company, a Wyoming corporation, as defendants, because of certain moneys alleged to have been collected and received by the defendants in consequence of their purchase and possession of certain water right contracts in which the bank asserted an assigned interest. The District Court, by its judgment in the matter, declined to allow the relief sought and this proceeding, by direct appeal, was instituted by the unsuccessful litigant to obtain a review of the record made in the case.

The facts developed and material to be considered here, as we view them, are these:

On the 3rd day of June, 1920, the Eden Irrigation and Land Company, a Wyoming corporation, hereinafter usually referred to as the "Irrigation Company," having previously acquired water rights for certain lands in Sweetwater County—said lands being approximately 11,-640 acres—to be disposed of to settlers in accordance with the provisions of the Federal law generally known as the "Carey Act" and the regulations thereunder, contracted with Charles E. Howell, Augustine Kendall and John P. Boyer, as co-partners, and thereby gave them the exclusive right "to settle and colonize any of said lands and to sell the water rights" therefor until November 1, 1920. This contract provided maximum and minimum prices per acre at which such water rights might be sold by the co-partners, the net amount of money which the Irrigation Company was to receive for such sales, the amounts it should pay to the co-partners for making the sales and, quoting from the contract:

"When any payment is made under the terms of this agreement the application or applications, and all moneys appertaining to the same or to the purchase of water rights, or in reference to this agreement are to be deposited in the FIRST NATIONAL BANK, of Green River,

Wyoming, to the credit of the EDEN IRRIGATION AND LAND COMPANY, party of the first part, and all settlements between the said first party, and the said second parties under this contract shall be made at the said FIRST NATIONAL BANK, of Green River, Wyoming, which said bank will deliver on behalf of the said first party to the said second parties, or to the applicants for and purchasers of water rights, all water contracts and water deeds when such applicants and purchasers are entitled to receive the same.''

It was further agreed that the Irrigation Company, as the first party to the contract, should not be bound to third parties, except in accordance with its customary water right contract with them, a blank form of which was attached and made a part of the agreement with the co-partners aforesaid, the second parties thereto. This form of water right contract used between the Irrigation Company and the purchasers of water rights, among other things, provided that the money paid by such purchasers should be delivered to the Irrigation Company, its successors or assigns, in nine yearly specified installments, the duty of collecting the payments to accrue necessarily resting upon that corporation.

With some modifications relative to extending the time within which the purchasers of water rights should make their first payments therefor, the contract of June 3rd aforesaid was, by a supplemental arrangement between the parties, of date March 1, 1922, extended until February 28, 1923.

A few days before the execution of the first contract above described and on May 20, 1920, an agreement was signed between ''A. Kendall and J. P. Boyer, doing business under the firm name and style of Kendall and Boyer'' and I. D. Putnam and H. C. Flaherty, also a co-partnership, wherein it was recited that Kendall and Boyer had ''a contract with the Eden Irrigation and Land Company, a corporation, to dispose of certain land and water rights

owned and controlled by'' that company and ''located in Sweetwater County, Wyoming.'' By this agreement, Kendall and his partner gave to Putnam and Flaherty ''the exclusive right to sell and dispose of water rights owned and controlled by said Eden Irrigation and Land Company in connection with not less than twelve thousand (12,000) acres of land in Sweetwater County, Wyoming, now segregated and being under the ditch of said Eden Irrigation and Land Company, in accordance with the laws, rules and regulations of the 'Carey Act' so called.'' This privilege was given by Kendall and Boyer in consideration of certain sales work and other things to be done and certain payments to be made by Putnam and Flaherty to the former, details not here important. This agreement, by a subsequent contract of the parties under date of March 6, 1922, was also modified and extended for a period of one year.

It appears that Putnam and Flaherty undertook the performance of the duties incumbent upon them under this contract and made sundry sales of water rights in consequence of which they subsequently asserted against Kendall and Boyer a claim for moneys alleged to be due them on account of such sales.

The Irrigation Company encountered financial difficulties and, in September 1922, Charles E. Howell, one of the co-partners mentioned above, was appointed receiver of the corporation by the District Court of Sweetwater County, and conducted its affairs for a number of years. On August 10, 1926, Howell, as such receiver, signed a contract with one George H. Ennis, one of the respondents herein, for the sale by said receiver to Ennis, as stated in the instrument:

''Without right of redemption and free and clear of all claims, clouds, liens and encumbrances of whatsoever, nature, and under and by the order of the said District

Court, first obtained, all of the assets, properties and rights, real, personal and mixed, of said Eden Irrigation and Land Company, whether heretofore specifically described herein or not.''

In the preliminary recitals of this contract, in the course of which the property of the Irrigation Company then in the receiver's hands was undertaken to be described, appears the following:

''All the company's interest in contracts for water and water rights heretofore made by said company or by the receiver herein, and appertaining to two thousand four hundred twenty-one and 06/100 (2,421.06) acres of land, more or less, with divers persons and entrymen, now totaling approximately some Seventy Thousand Dollars ($70,-000.00); the company's interest, however, in said Seventy Thousand Dollars ($70,000.00) being approximately Forty-five Thousand Dollars ($45,000.00); and it is the intent to sell and transfer, by this contract, all and whatever the company's interest is in this above mentioned Seventy Thousand Dollars ($70,000.00).''

The agreed purchase price was the sum of $170,000. The contract also required the receiver to do certain things to expedite the sale among which were the procurement of an approval and confirmation of the contract by the court in charge of the receivership, and

''To furnish to said purchaser a certificate or statement in writing setting forth the names and addresses of the entrymen, the respective descriptions of land, the amounts due on deferred payments in connection with all water contracts in existence, and the amounts due as deferred payments in connection with said contracts; and the amount of commissions to which I. D. Putnam and H. C. Flaherty, a certain co-partnership doing business under the firm name and style of 'Eden Valley Land Company,' is entitled in connection therewith; a true and correct copy of the contract or agreement between said company or said receiver and I. D. Putnam and H. C. Flaherty, a certain co-partner-

ship doing business under the firm name and style of 'Eden Valley Land Company.' "

On October 14, 1926, upon the application of the receiver, wherein the above mentioned contract was submitted to the District Court of Sweetwater County, that court by order directed the sale thus agreed upon to be made by the receiver in accordance with the terms of said contract. This order of sale also provided "that when the said purchase price is paid as herein provided by the said George H. Ennis, that he shall take the said property, and all of it, clear of every encumbrance of every nature whatsoever."

An original proceeding in this court for a writ of prohibition was then begun by one of the creditors of the Irrigation Company, who had objected to the order of sale, in an endeavor to prevent the lower court from carrying that order into effect. The effort failed (State ex rel. Avenius v. Tidball, District Judge, 35 Wyo. 496, 252 Pac. 499) and on January 21, 1927, the District Court aforesaid, by its order of that date, confirmed "the sale of the assets and property of said Eden Irrigation and Land Company to the said George H. Ennis, purchaser * * * subject, however, to the terms and conditions in this order contained." Among the assets of the Irrigation Company thereupon described in said order as included in the sale to said Ennis was "All of the right, title, interest and equity of the Eden Irrigation and Land Company in, to and under contracts for the sale of water for the following described lands, with the lien thereon, and together with all moneys due and to accrue under said contracts." Following this statement there was given a list of the water right contracts sold, thirty-one in number, the names of the holders, the amounts and descriptions of the acreage each held being separately set forth. After describing, with some particularity, other property em-

braced within the terms of sale, the order concludes the description thereof thus:

"Together with any and all other assets or property, real, personal, or mixed, of every kind and description, and wheresoever situated, owned, held by or belonging to the said company or said Receiver, or hereafter acquired by him, all of which property is sold as a unit, without right of redemption, and free and clear of all liens and encumbrances."

It developed that the receiver, Howell, subsequent to October 14, 1926, the date of the order directing the sale of the Irrigation Company's assets in his hands, received certain moneys, some of them being on account of the water right contracts owned by it and included in the sale agreement as aforesaid. Under date of April 5, 1927, the attorney for the receiver and now attorney for plaintiff and appellant wrote a letter addressed to the receiver and to Ennis as purchaser in which the following statement was made:

"My opinion is that collections made by the Receiver on and after the 15th day of October, 1926, are the property of the purchaser, Mr. George H. Ennis, and that all collections made by the Receiver prior to the 15th day of October, 1926, are trust funds in the hands of the Receiver, provided, however, that all maintenance charges collected or receivable up until the 31st day of December, 1926, are trust funds, and bills receivable for the Receiver, and that all taxes unpaid until December 31st, 1926, are bills payable by the Receiver."

Thereafter and on May 17, 1927, the receiver signed a "Statement of Credits" entitled in the receivership matter which recited that there was due from the purchaser Ennis the sum of $25,000 as a first payment on the agreed sale price. The statement then continues:

"Since the 14th day of October, 1926, the receiver has collected from bills and accounts receivable, due to the defendant, Eden Irrigation and Land Company and to the receiver, which said bills and accounts receivable were the assets of the Eden company and were purchased with all other assets of the company, as of the date of October 14, 1926, the following moneys, to-wit:"

There are then listed some eight payments received from as many persons, some of whom were the holders of water right contracts with the Irrigation Company and which contracts were included in the sale to Ennis as above stated, said payments totaling $6,483.95. After adding to this amount $330.25, the sum paid by Ennis for certain attorney's fees, which were stated as chargeable to the receiver, the balance due by the purchaser to the receiver was indicated as $18,185.80. To this statement of credits was attached a certificate, also over the signature of the receiver, to the following effect:

"I, C. E. Howell, receiver for the Eden Irrigation and Land Company, do hereby certify that the above is a true, full and correct account of the transactions between the said purchaser, George H. Ennis, and the receiver, and that the receiver herein did receive the above sums of money to the use and for the benefit of the said purchaser, George H. Ennis.

"And I further certify that the above and foregoing attorney's fees is true and correct, and is a just claim of the said purchaser, George H. Ennis, against the receiver, and I do hereby acknowledge having received from the said purchaser, George H. Ennis, the sum in cash of Eighteen Thousand One Hundred Eighty-five and 80/100 ($18,185.80) Dollars, which, together with the above items, makes the full, true and just payment of Twenty-five Thousand ($25,000.00) Dollars, which is the first payment ordered and authorized by the court to be made in payment of the said property."

On this date, May 17, 1927, the receiver executed his deed transferring to Ennis all of the assets of the Irriga-

tion Company, specifically incorporating therein the language of the order of confirmation of the sale quoted above and of date, January 21, 1927. Shortly after receiving the conveyance and upon the same day, Ennis conveyed all the property thus acquired to the Rock Springs Water Company, a corporation, and one of the defendants and respondents here.

On July 21, 1927, Ennis paid to the receiver the entire balance of the purchase price and the District Court, by its order of August 26, 1927, confirmed the act of the receiver in accepting the same and in allowing a two per cent discount for cash in lieu of deferred installment payments as had previously been agreed. This last mentioned order entitled in the receivership additionally recites the appearance therein of Augustine Kendall on behalf of the firm of Augustine Kendall, J. P. Boyer and Charles E. Howell, claiming "certain moneys alleged to have been used by the receiver herein for the benefit of the defendant Eden Irrigation and Land Company but belonging to said "firm"; the order further recites that "a like claim" was "presented to the court on behalf of the partnership of Putnam and Flaherty," that testimony was taken concerning both these claims and that the matters were taken under advisement by the court.

On or about October 20, 1927, Ennis and the Rock Springs Water Company were served with three notices of that date whose substance was as follows: One signed by Eden Irrigation and Land Company by C. E. Howell, Receiver, advising that the equities in all water contracts and other evidences of indebtedness "which have accrued or which will accrue to Putnam and Flaherty on account of any transaction with the Eden Irrigation and Land Company have by Putnam and Flaherty been assigned" to that company and that all settlements on such account should be made with said company and not with Putnam and Flaherty; the second signed by C. E. Howell, in-

dividually, setting out that he had a "third interest in the equities in all water contracts and other evidences of indebtedness" and directing that all settlements should be paid "one-third to the undersigned" and not to the other members of the partnership; the third signed by Margaret Boyer, the widow of J. P. Boyer, deceased, of similar purport as that signed by Howell, individually, claiming a third interest for herself.

November 3, 1927, the District Court made its order disposing of these claims thus:

"That the claim of Putnam and Flaherty be approved to be paid by the Receiver to the said Putnam and Flaherty, or to their attorneys, Frank Yates and D. A. Preston, Esquires, upon the filing of the proper receipt in the sum of Five Thousand Dollars ($5,000.00); the said Putnam and Flaherty to assign as per their offer to the Eden Irrigation and Land Company, its successors and assigns, all notes, bills, choses in action, or other indebtedness claimed by them to be due upon any sales made by them, or either of them, of water rights in acting as sale agents for the said Eden Irrigation and Land Company in selling water rights of the Eden Irrigation and Land Company to settlers under its project or otherwise. And that all moneys due to the said firm of Putnam and Flaherty, because of any such transactions, are hereby declared to be the property of the Eden Irrigation and Land Company, to be collected by the Eden Irrigation and Land Company by the First National Bank of Green River, for the use and benefit of the Eden Irrigation and Land Company, as hereinafter provided for in this decree, or until the further order of this court.

"And the court further finds that the claim of Augustine Kendall, J. P. Boyer and Charles E. Howell, be and the same is hereby approved to be paid by the Receiver to the said partnership of Kendall, Boyer and Howell, or to the individual partners of said partnership of Kendall, Boyer and Howell, in the sum of Five Thousand Dollars ($5,000.00), first deducting therefrom the sum of One Thousand Fifty Dollars ($1,050.00) attorney's fees."

Under date of October 6, 1928, C. E. Howell, Margaret Boyer and Augustine Kendall, by separate instruments of assignment, transferred to the First National Bank of Green River, plaintiff and appellant here, their interests in "all the moneys due and coming" to them on account of the co-partnership of Kendall, Boyer and Howell, "in the selling of lands under the agreement with the Eden Irrigation and Land Company,   *   *   *.  Said collections having been made by George H. Ennis and the Rock Springs Water Company upon certain notes and contracts turned over to the said George H. Ennis at the sale of the Eden Project, and which have been collected by him." There do not seem to be any assignments in the record from Putnam and Flaherty aforesaid, to the bank, its interest in the "collections" last above mentioned being asserted under the quoted language of the court order dated November 3, 1927. There is in the record, however, a receipt given by the attorneys for Putnam and Flaherty to C. E. Howell, as receiver, for the sum of $5,000 for "in full settlement of account of Putnam and Flaherty."

Ennis and the Rock Springs Water Company, upon notice of the assignments, declined to recognize the bank as having any rights to the money due and to accrue under the water contracts sold to Ennis as above related and the bank consequently instituted this litigation to enforce an accounting therefor with the result already indicated, the court making a general finding in favor of the defendants. Additional facts shown by the record will be referred to as they may be found necessary in considering the questions presented.

The claim is made for appellant that through the contracts, the one dated June 3, 1920, between the Eden Irrigation and Land Company and Charles E. Howell, et al., and the other May 20, 1920, between A. Kendall and J. P. Boyer, on the one side, (C. E. Howell being apparently a silent partner in this agreement) and I. D. Putnam and H. C.

Flaherty, on the other, as herein above described, and through the assignments to it mentioned above as well as the District Court order of date, November 3, 1927, appellant has an interest in the water right contracts and in the moneys due and to accrue thereunder and should have from respondents an accounting for what has been collected from that source since the sale of the Irrigation Company's property to Ennis. Upon a careful inspection of this record, we are unable to perceive that such a conclusion can properly be reached.

There is abundant authority for saying that the contract of June 3, 1920, whereby Kendall, Boyer and Howell were given the exclusive privilege of selling water right contracts for the Irrigation Company, gave those parties no lien or claim upon the water contracts of the settlers with that company which they procured. 37 C. J. 318, § 21, and extended list of cases cited in note 92; Dillon v. Barnard, 21 Wall. 430, 22 L. Ed. 673. Likewise, under weighty authority, that contract did not constitute an assignment by the Irrigation Company to these co-partners of any interest in the water right contracts. In Christmas v. Russell, 14 Wall. 69, 20 L. Ed. 762, the Supreme Court of the United States, speaking through Mr. Justice Swayne, said:

"An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee."

And in Donovan v. Middlebrook, 95 App. Div. 365, 88 N. Y. S. 607, 608, where a broker employed to sell realty was assisted by another and, after a sale, gave the other a written agreement wherein he promised that the other should have one half the commission earned, amounting to

a specified sum, it was held that the instrument was not an assignment and in the course of its opinion, the court said:

"To constitute a valid assignment, there must be a perfected transaction between the parties, intended to vest in the assignee a present right in the thing assigned. An agreement to pay a certain sum out of, or that one is entitled to receive the same from, a designated fund when received, does not operate as a legal or equitable assignment, since the assignor in either case retains control over the subject-matter. 'The test,' even of an equitable assignment, 'is whether the debtor would be justified in paying the debt, or the portion contracted about, to the person claiming to be assignee.' Fairbanks v. Sargent, 117 N. Y. 320, 22 N. E. 1039, 6 L. R. A. 475. 'It is the settled doctrine in this state,' says the court in Thomas v. N. Y. & G. L. R. Co., 139 N. Y. 163, 34 N. E. 877, 'that an agreement, either by parol or in writing, to pay a debt out of a designated fund, does not give an equitable lien upon the fund, or operate as an equitable assignment thereof.' In Williams v. Ingersoll, 89 N. Y. 508, Judge Earl said: 'Whatever the law may be elsewhere, it must be regarded as the settled law of this state that an agreement, either by parol or in writing, to pay a debt out of a designated fund, does not give an equitable lien upon the fund, or operate as an equitable assignment thereof. It was so decided in Rogers v. Hosack's Executors, 18 Wend. 319. That case was followed, and the same rule laid down, in Christmas v. Russell, 14 Wall. 69 (20 L. Ed. 762), and Trist v. Child, 21 Wall. 441 (22 L. Ed. 623).' "

See also Holmes v. Bell, 139 App. Div. 455, 124 N. Y. S. 301, order affirmed, 200 N. Y. 586, 94 N. E. 1094; Willis v. Mann Construction Company, 145 Tenn. 318, 236 S. W. 282, 5 C. J. 913, § 80, and cases cited.

But aside from the utterances of these authorities it is clear, under the general finding of the trial court made upon conflicting testimony and by which finding we are necessarily to be governed here, Ennis, at the time he purchased the water right contracts, knew nothing of any claims on behalf of Kendall, Boyer and Howell relative to an interest in said contracts and, as said in 5 C. J. 974, § 165: "accord-

ing to the weight of authority an assignee who takes without notice of latent equities in favor of third persons acquires priority over such equities.'' Illustrative of this view we find Chancellor Kent, in Murray v. Lylburn, et al., 2 John's Ch. 441, using this language:

"It is a general and well-settled principle, that the assignee of a chose in action takes it subject to the same equity it was subject to in the hands of the assignor. (2 Vern. 691, 764. 1 P. Wms. 496. 1 Ves. 123. 4 Vesey, jun. 21.) But this rule is generally understood to mean the equity residing in the original obligor or debtor, and not an equity residing in some third person against the assignor. He takes it *subject to all the equity of the obligor,* say the judges in the very elaborately argued case of Norton v. Rose, (2 Wash. Rep. (Va.) 233, 254.) on this very point, touching the rights of the assignee of a bond. The assignee can always go to the debtor, and ascertain what claims he may have against the bond, or other chose in action, which he is about purchasing from the obligee; but he may not be able, with the utmost diligence, to ascertain the latent equity of some third person against the obligee.''

Additionally, there is the important fact also to be taken as established by the general finding aforesaid, that Howell, one of the co-partners, whose claim is now asserted through an assignment of an alleged interest in these water right contracts, at the time of entering into the sale contract with Ennis, did not undertake to assert it then either for himself or for his co-partners.

It will be recalled that the water right contracts provided that all payments of money thereunder were to be made by the settlers to the Irrigation Company and to no one else. It alone retained the right to collect them. Even the contract of June 3, 1920 between that company and Kendall, et al., provided, as we have seen, that such payments should be deposited in the First National Bank of Green River to the credit of the Eden Irrigation and Land Company, that agreement also requiring that future payments due Kendall, et al., should "by the party of the first part (the Irriga-

tion Company) be remitted to the parties of the second part as they, the second parties, may by unanimous consent, from time to time direct." It is obvious that the legal title to the water right contracts and to the moneys accruing therefrom always remained in the Irrigation Company. Its agreement with Kendall, et al., merely obligated it to make certain payments to them for their services out of the funds it obtained from settlers' payments on these water right contracts. In short, Kendall, et al., were contract creditors of the company and were to be treated and protected as such in the receivership proceedings. It is evident that any rights Putnam and Flaherty might have accrue through their contract with Kendall and Boyer, and could not be more potent than those of the latter. It follows from what has been said that when the water right contracts were, under the sanction of the District Court of Sweetwater County, sold by the receiver to Ennis free and clear of all claims and encumbrances whatsoever, as was the fact, from that moment neither the receiver nor any creditors of the Irrigation Company, as such, had any rightful claim for the moneys due and to accrue under them.

It is a familiar principle of law that the contemporary construction of a contract by acts of the parties is entitled to serious consideration by the court whose duty it becomes to determine its meaning. 6 R. C. L. 852, § 241; J. W. Denio Milling Company v. Malin, 25 Wyo. 143, 165 Pac. 1113; Rohrbaugh v. Mokler, 26 Wyo. 514, 188 Pac. 448. In the case at bar, the conduct of the parties reasonably interpreted bears out the views expressed above concerning the effect of the contracts they made. In this connection, it will be recalled that Howell, as receiver of the Irrigation Company, from October 14, 1926 to May 17, 1927, collected over $6,000, a large part of this sum being received from the water right contract holders listed in plaintiff's petition as those owning contracts in which it claimed an interest. The question of the ownership of this money being then

submitted to the attorney for the appellant here,—at that time attorney for the receiver—he gave it as his opinion and, as we think, correctly, that all collections thus made were the property of the purchaser Ennis. This view was adopted and followed by the receiver, Howell, in his "Statement of Credits" and his certificate thereto appended as shown by the quotations above made from those instruments. Ennis was given credit for this money on the first installment due from him on the purchase price and the District Court recognized and approved the entire transaction. No claim was submitted at that time to the court by Howell on either his own behalf or on behalf of the partnership of which he was a member that the partnership asserted an interest in these funds. Yet, if the position of the appellant now taken is sound, the partnership was certainly entitled to share therein. No reason is advanced in excuse of this failure to present such a claim. The logical inference is that the parties did not consider they had one.

Again, after the entire purchase price of the property had been paid by Ennis, the record shows the claims of not only Kendall, Boyer and Howell, but also those of Putnam and Flaherty—and why these last should be regarded as a claim against the company, in view of the contracts of the parties, is not altogether clear—being presented by the receiver, Howell, to the court as claims against the fund resulting from the sale of the Irrigation Company's assets, i. e., as claims against the company. They were reduced in amount, approved by the court and paid as such. No complaint seems to have been then presented that the receiver had, under court order, sold property in which these parties had a definite interest. The attorneys representing Putnam and Flaherty signed a receipt "in full settlement" of the claim of the parties last mentioned. While, under the order of the District Court, they were to assign to the Irrigation Company "all notes, bills, choses in action or other indebtedness claimed by them to be due upon any

sales'' of water rights as sale agents for the Irrigation Company and it was made the duty of the appellant herein to collect them for the benefit of the Irrigation Company, so far as this record shows, they never were sale agents of that company nor did they ever make any such assignment. As already intimated, it is difficult to see how they could rightfully claim an interest in the Irrigation Company's contracts with settlers as against its successors in interest when they never had any contractual relations with it, whatsoever.

Our attention is drawn by appellant to the recital clause in the original contract of purchase dated August 10, 1926, relative to the total amount of the water right contracts which, it will be remembered, reads:

''The company's interest, however, in said Seventy Thousand Dollars ($70,000.00) being approximately Forty Five Thousand Dollars ($45,000.00); and it is the intent to sell and transfer, by this contract, all and whatever the company's interest is in this above mentioned Seventy Thousand Dollars ($70,000.00).''

It is said that this language shows that the receiver intended to transfer to Ennis only an interest of $45,000 in these contracts and that the remaining $25,000 interest belonged to Putnam and Flaherty and Kendall, Boyer and Howell. However, the clause certainly declares that it was the receiver's intention to sell the company's entire interest in these contracts. While it states the interest of the Irrigation Company to be approximately $45,000, it is altogther silent—and this is true of the entire contract—as to the ownership of the balance of the $70,000 total. For aught that appears, the settlers, the other parties to the water right contracts, may have owned that balance in consequence of payments made. If Putnam and his partner and Kendall and his associates held rights in these contracts, why was it not so stated and the amount thereof? It would have been perfectly easy to do so. Nothing that we can see

prevented a concise and clear definition of the rights of these parties in the written contract of sale because Howell, the receiver, as a member of the partnership of Kendall, Boyer and Howell, himself, had full knowledge concerning these matters.

It is argued that Ennis knew before he signed the sale contract of August 10, 1926, that Putnam and Flaherty, and Kendall, Boyer and Howell asserted an interest in these water right contracts to the extent of $25,000, because Howell had previously told him so. Howell, as a witness, so stated but Ennis' testimony is to the effect that he knew nothing about any claim on the part of Kendall, Boyer and Howell prior to his executing the contract and that, while he was told by Howell of the claim of Putnam and Flaherty, the receiver stated in substance that it did not amount to much and that he, Ennis, need not worry about the matter. Ennis is corroborated in this testimony concerning the Putnam and Flaherty claim by that given by Mr. Muir. Ennis' testimony as to the Kendall, et al., claim harmonizes with the written contract itself, for it, as previously indicated, mentions no such claim. It is significant also that the receiver never troubled himself to furnish Ennis with "the amount of commissions to which I. D. Putnam and H. C. Flaherty" were entitled, although the contract required him to do so. It is further significant that the contract of August 10, 1926 refers to the interest of Putnam and Flaherty merely as "commissions" and not as an interest in the water right contracts. But, however the testimony of Ennis and Howell be interpreted, there was clearly a conflict in the statements of these two men which the District Court had the authority to resolve against the plaintiff.

The contention is advanced for appellant that respondents' own books disclosed that Kendall, et al., had an interest in the water right contracts. But the bookkeeper of the receiver, Howell, was, the record shows, taken over as an employee by Ennis and the Rock Springs Water Com-

pany along with the assets of the Irrigation Company. When the books of the Rock Springs Water Company were opened, the bookkeeper went ahead on his own authority for he testified as a witness for the plaintiff, on cross-examination:

"Q. Did you have any conversation with Mr. Ennis as to how you should keep these accounts?
A. No, I don't believe I ever did.
Q. Did he give you any instructions about that?
A. No, I think I opened them up entirely on my own authority—that is, he hired me to open the accounts, and I did so to the best of my ability."

Under such circumstances, the book statements would seem to be of not much weight in this matter as declarations against interest as it appears the accountant merely took the forms used by the Irrigation Company and continued them.

Error is assigned in that the trial court permitted the defendants to make certain amendments to their answer and to introduce proofs to support them without affording plaintiff an opportunity to respond. The amendment principally in question set out certain alleged representations on the part of Augustine Kendall as made to Ennis before the contract of purchase was signed, to the effect that Kendall claimed no interest in the assets of the Irrigation Company. The other amendments making minor corrections in the allegations of the answer appear to be of little moment.

The record discloses that on the first day of the trial the substance of all the proposed amendments was orally stated to the court in the presence of opposing counsel and no objection to their being made seems at that time to have been interposed. The suggested amendments were reduced to writing by counsel for the defendants over night and on the morning of the second day presented to the court and counsel for the plaintiff, the latter then stating that he desired time to examine them. On the third day of the trial, plain-

tiff's counsel made his objections to allowing the amendments, the principal objection being that the main amendment made it necessary that Augustine Kendall be called as a witness for plaintiff concerning conversations with Ennis which, under the original pleadings in the case, was not required. Counsel for defendants informed the court and counsel for plaintiff that they were willing to stipulate either that Kendall would deny Ennis' testimony as to these conversations or that Kendall's deposition might thereafter be taken. It appears that counsel for plaintiff made no response to these suggestions. The trial court allowed evidence to be introduced in support of the amendment aforesaid, reserving the ruling on the objection made. The trial closed without any request having been made on plaintiff's behalf to introduce evidence contra. The ruling on the objection was not announced until the decision of the court disposing of the case was given at which time all the amendments asked by the defendants were allowed.

It would seem that the amendments were treated by the court as really made in the course of the trial but subject to a ruling striking the same if, upon mature consideration, they were disallowed, inasmuch as the Judge said, "You can take your exception to any evidence that goes in under any of these allegations. I will let it go in subject to being stricken out if the answer is not allowed." It is unnecessary to refer to the wide discretion vested by statute in the trial court to allow amendments to pleadings as the case progresses. Here no request for a continuance was made by the plaintiff, although it knew that the evidence to support these amendments was introduced before the court and might be permitted to stand if the amendment was allowed. It is open to serious question whether plaintiff did not waive its rights by not requesting opportunity to meet the evidence thus presented. Nevertheless, as we view the case, the issues as they existed before the amendment chiefly in question was made were amply sufficient to support the judgment of the court and the error in technically not al-

lowing the amendment until the decision in the case was announced—if error there was under the circumstances here shown—was harmless. See 4 C. J. 943-945, § 2920, and cases cited. The trial judge could and, for aught that appears, did ignore the amendment complained of, and still properly reach the conclusion that plaintiff was not entitled to an accounting. That this is so we think is reasonably established by what has hereinbefore been said.

The controlling questions in the case as presented to the District Court seem to have been chiefly legal in character, growing out of the due interpretation of the contracts involved. So far as we can see, they were solved correctly. As already intimated, we are necessarily controlled by the general finding in defendants' favor where disputed questions of fact affect the decision and such questions were determined upon conflicting testimony. Our conclusion is that the judgment should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.