Argued January 15; affirmed February 16; rehearing denied
April 12, 1932

# KLAMATH COUNTY *v.* COLONIAL REALTY COMPANY

(7 P. (2d) 976)

*H. C. Merryman,* of Klamath Falls, for appellant.

*E. L. Elliott,* of Klamath Falls (Harry D. Boivin, of Klamath Falls, on the brief), for respondent.

CAMPBELL, J. The Klamath Irrigation District is a quasi-municipal corporation organized, under the laws of the state of Oregon, for the purpose of dealing with the United States Government relative to waters to be used in irrigating certain lands within the district and is the successor in interest of what is known as the Klamath Water Users Association, which was a private corporation organized for the purpose of irrigating the lands of the individual members of the association. Some time after the organization of the district, the defendant became the owner of about 742 acres of land within the district and under the irrigation ditch. The defendant is a private corporation organized under the laws of the state of Oregon for the purpose of buying selling and colonizing land in Klamath county, Oregon. The United States Government through its Reclamation Service or Bureau, contracted with the owners of the land within the Klamath Irrigation District to irrigate said land, taking to itself the title to the waters and constructing the irrigation and drainage ditches and the maintenance and operation of the same. That to pay the expense of such construction, maintenance

and operation, the owners of the land within the district, by virtue of said contract pledged the land within the project to pay the United States, over a term of years, the cost of construction, amounting to $1,363,-036.26, together with the annual cost of maintenance and operation. This contract was entered into on the sixth day of July, 1918, pursuant to a statute of the United States commonly known as the Warren Act. One of the provisions of this act is:

"That water shall not be furnished from any such reservoir or delivered through any such canal or ditch to any one landowner in excess of an amount sufficient to irrigate 160 acres."

It is the duty of the Klamath Irrigation District to levy a tax each year sufficient to care for the principal and interest due upon the cost of construction and to pay the cost of maintenance and operation of the reservoirs, canals and ditches.

It appears that the defendant became the owner of 742 acres of land described in the certificates of delinquency sought to be foreclosed herein, within the project subsequent to the organization of the Water Users Association and the Klamath Irrigation District and subsequent to the execution of the contract of the Klamath Irrigation District with the United States. The defendant and its predecessors in interest paid all assessments and taxes levied by the Klamath Irrigation District up to the last half of such taxes for the year 1920. From that time on they permitted all taxes to become delinquent. On August 14, 1925, certificates of delinquency were issued by the sheriff of the county to plaintiff herein, covering the real estate owned by the defendant within the Klamath Irrigation District. Said certificates showed the amount of taxes that was delinquent and unpaid up to the time of issuance.

The defendant's answer was in effect an admission of its ownership of the land and a general denial of the other material allegations. For a separate answer, defendant alleged merely as a conclusion of law that plaintiff is not the real party in interest. For a second answer it pleads what is known as the Warren Act and the contract entered into by the Klamath Irrigation District with the United States under and pursuant to said act, and alleged that it would be illegal for the Klamath Irrigation District to supply defendant with water for irrigating more than 160 acres of its land, but it nowhere alleges that sufficient water to irrigate all the land owned by it was not supplied. For a third separate answer, it alleges that the ditches for carrying the water to and over its land were so poorly and negligently constructed that water escaped therefrom and flooded a portion of its land, rendering it unfit for cultivation. It further alleges that the irrigation supplied was of no benefit to a large portion of its land for the reason that some of the land owned by it was so shallow that it could not be beneficially irrigated.

These separate answers were demurred to on the ground that they did not state facts sufficient to constitute a defense. The demurrer was sustained. The defendant thereupon filed practically the same answers over again, which on motion were stricken from the record and the parties proceeded to trial on the complaint and a general denial for an answer.

The court found in favor of plaintiff. Defendant appeals.

It appears that some time after the certificates of delinquency sought to be foreclosed were issued, and before the beginning of the present suit, the defendant paid all the taxes except those levied by the Klamath

Irrigation District. Defendant admits that it owns 160 acres of land that is irrigable under the project and for which it received water, but makes no tender in payment for such service.

It is first claimed by the defendant:

"The Klamath Irrigation District is prohibited by law from delivering water to this appellant in an amount exceeding that necessary to irrigate one hundred and sixty acres of land and this appellant is prohibited by law from receiving and using the water in excess of an amount sufficient to irrigate one hundred and sixty acres of land for which the taxes herein attempted to be foreclosed."

■ This question is not presented under the pleadings in this case. The defendant makes no claim that it did not get the water on its land. It is claiming that it received water illegally and therefore should not be required to pay for it. What is known as the Warren Act (February 21, 1911, Ch. 141, 36 United States Statutes 925) was enacted for the purpose of declaring the policy of the Reclamation Bureau of the United States not to undertake to construct irrigation works unless the land in the project, subject to irrigation, should be held in no greater quantities by each owner than 160 acres. It is equally the policy of the government to compel the owners of land to pay for the cost of construction of irrigation works as well as of maintenance where the land is subject to irrigation from such works. There is nothing in the Warren Act that prevents a landowner under a completed project, from selling his land, or that prevents one person from owning more than 160 acres on such completed project. The government might refuse to furnish water for more than 160 acres to any one owner, but if it did furnish water which was accepted and received by such holder, then

the holder would be compelled to pay for the service. If such owner should refuse to pay, it cannot be heard to complain if a delinquent certificate should be issued and foreclosed against its land.

It is next contended:

"The attempt to foreclose these certificates and take from this defendant some $18,000 for benefits where no benefit whatever has been rendered nor has accrued is the taking of property without due process of law, and is a taking of property without compensation and is unconstitutional and void."

We do not see how this question can be raised in this proceeding:

"The board of directors shall, on or before the first Tuesday in September of each year, make a computation of the whole amount of money necessary to be raised by said district for the ensuing year for any and all purposes whatsoever in carrying out the provisions of this act, including estimated delinquencies on assessments. Said amount of money, when so determined by said board, shall be and constitute an assessment upon all the land included in said district, and shall be apportioned by said board to the lands owned or held by each person, firm or corporation, so that each acre of irrigable land in the district shall be assessed and required to pay the same amount as every other acre of irrigable land therein, except as hereinafter otherwise provided. The board of directors shall determine the number of irrigable acres owned by each landowner in the district and the proportionate assessments, as herein provided for, as nearly as may be from available information, and should it be found that a substantial error has been made in such determination proper adjustment may be made at the next equalization of the annual assessment by increasing or decreasing the amount any land owner shall pay; * * *." Oregon Code 1930, 48-801.

■ The landowner who feels himself aggrieved over any assessment made by the irrigation board has his

remedy by an appeal to the board of equalization. The record in this case does not disclose that such an appeal was taken. The landowner may not sit idly by, without taking advantage of the remedies that the law affords him, and when the certificates of delinquency are attempted to be foreclosed expect to receive the benefit of the remedy he should have sought before the board of equalization.

"* * * and the assessment * * * is prima facie evidence that all of the requirements of the law in relation thereto have been complied with * * *." Oregon Code 1930, 48-801.

■ The defendant claims that its lands are not benefited because it owns more than 160 acres. It bought these lands according to its own admission, for the purpose of selling the same. As arid lands, defendant's holdings have very little value, but as lands with water ready to be used for irrigation undoubtedly the value is greatly enhanced. The reservoirs, canals and ditches being already constructed, the lands would be benefited by the amount the price would be increased over their value as arid lands. It is admitted by defendant that as soon as it would sell 160 acres or any lesser amount to another individual or corporation, the lands thus sold would be entitled to the water service for irrigation purposes. The defendant cannot be permitted to hold 742 acres for speculation and receive all the benefits of having reservoirs, canals and ditches constructed and maintained without cost to it, until it disposes of its holdings in parcels of 160 acres or less: *In re Goshen Irrigation District,* 42 Wyo. 229 (293 P. 373); *Nampa & Meridian Irrigation District v. Petri,* 28 Idaho 227 (153 P. 425).

The manner of assessing the land within an irrigation district for benefits and costs of maintenance is

provided by Oregon Code 1930, 48-801 et seq. The board shall determine the land to be assessed and the amount of the assessment, and shall apportion the same and give notice of time and place of meeting of board of equalization (Oregon Code 1930, 48-801), and shall, at such hearing, make such changes in the apportionment of assessments as the facts may warrant (Oregon Code 1930, 48-805). The board shall then turn over a duplicate copy of the assessments as equalized to the county assessor who shall extend the same on the county assessment roll as other taxes and assessments are extended, and when the roll is complete, turn the same over to the sheriff who shall collect all taxes, including those of the irrigation district: Oregon Code 1930, 48-806.

The Klamath Irrigation District, the county assessor and the sheriff seem to have substantially complied with all the provisions of the law in making and apportioning and collecting the assessments.

"It is claimed that the descriptions of the land which appear in the assessment roll and the certificate of delinquency are so indefinite as to be absolutely void for the reason that neither of said instruments disclosed the meridian, county or state in which the lands sought to be taxed are situated."

This matter is first presented in this court and was not raised before the trial judge. However:

"The board shall prepare a list or record of said assessments and apportionments in duplicate, giving the description of the ownership or holdings of each person, firm or corporation therein assessed or apportioned, one of which shall be a permanent record in the office of said board. Any irregularity or error in the description shall not be deemed jurisdictional, or render the assessment void, if the land assessed can be identified, and the assessment and apportionment made by the board of directors, as in this act provided,

is prima facie evidence that all of the requirements of the law in relation thereto have been complied with and that the same are liens against the property to the same extent as other taxes lawfully levied  *  *  *." Oregon Code 1930, 48-801; Oregon Laws 1920, 7328; Special Session Laws 1921, Section 4, page 15.

■ There can be no difficulty in identifying the land from the descriptions on the assessment roll and in the certificate of delinquency when taken in connection with the admissions of defendant in its answer, and the instant case does not fall within the doctrine announced in *Martin v. White,* 53 Or. 321 (100 P. 290).

"After the expiration of three years from the date of delinquency, when any property remains on the tax rolls for which no certificate of delinquency has been issued, the sheriff shall proceed to issue certificates of delinquency on said property to the county, * * *." Oregon Code 1930, 69-816.

The certificates of delinquency under consideration were duly issued according to the sections of the code just cited, and this suit is for their foreclosure.

■ It is contended by defendant that section 48-808, Oregon Code 1930, Laws of 1923, chap. 128, applies to irrigation districts. A casual reading of this section will show that it simply gives an irrigation district an additional means of protecting its assessments.

"Any time after the expiration of six months from the date of delinquency of any taxes levied upon real property within an irrigation or drainage district, when any property within such district remains on the tax roll for which no certificate of delinquency has been issued, the sheriff of such county within which such property may be situated shall have the right and it shall be his duty  *  *  *  upon demand of such irrigation or drainage district and upon payment of all taxes levied against such land, except the irrigation or drainage district tax included therein, without penalty and in-

terest thereon, to make out and issue to such irrigation or drainage district a certificate of delinquency against such property for the full amount of taxes levied against said property, including the tax levied by such irrigation or drainage district. * * *." Oregon Oregon Code 1930, 48-808.

This places an irrigation district practically in the same position as an individual regarding lands within the district in demanding a certificate of delinquency, except that it need not pay penalties or interest or the taxes assessed in favor of itself.

In 1923 the Legislature amended section 4323, Oregon Laws, now 69-720, Oregon Code, to read as follows:

"All penalties and interest shall be for the benefit of the county, except that in the case of assessments levied as an irrigation district tax, penalties and interest against such delinquent irrigation district tax shall be fixed by the board levying the same, and all such penalties and interest shall accrue to and be held for the benefit of the irrigation district levying the same." Oregon Code 1930, 69-720.

■■ This amendment would not affect the taxes levied for 1920, 1921 and 1922, but would affect the penalties and interest on the 1923 and 1924 taxes. The record fails to disclose that the board of directors of the irrigation district ever fixed any penalty or interest, so none may be collected for these years. This being a suit in equity, the court may correct a mistake of this kind. Such a mistake would not be jurisdictional, but the decree should be modified in this respect.

It is also claimed by defendant:

"That inasmuch as the appellant, before the institution of this suit, paid all of the state and county taxes levied against the lands sought to be foreclosed upon in this suit, the plaintiff, Klamath County, has no pecuniary interest in the suit and is not the real party and is not entitled to bring the suit."

⬛ The mere fact of paying the state and county taxes does not relieve the county of its duty to foreclose the certificates of delinquency for the benefit of the irrigation district. Under certain circumstances the irrigation district may take a certificate of delinquency: Oregon Code 1930, 48-808. It is not compelled to do so. If it does not avail itself of this option, the duty remains on the sheriff to issue the certificate of delinquency to the county and to proceed to foreclose the same: Oregon Code 1930, 69-816.

It is also claimed by the defendant that the record does not show compliance with the budget law during the years 1922 and 1923. Compliance with the budget law is a matter preliminary to the duplicate assessment being turned over to the county assessor, which duplicate "is prima facie evidence that all requirements of law in relation thereto have been complied with": Oregon Code 1930, 48-801.

The cases of *Martin v. White,* 53 Or. 319 (100 P. 290), *Noble v. Watrous,* 84 Or. 419 (163 P. 310, 349), and other similar cases, were cases under the law as it stood prior to 1907. The legislature at its regular session of 1907 completely revised the manner and method of collecting delinquent taxes: Session Laws 1907, ch. 267, p. 543 et seq. Until the enactment of this statute what was known as the delinquent tax roll was prepared and a warrant issued to the sheriff to sell all the property on said delinquent tax roll as upon execution and to issue a certificate of sale to the one who made the best bid. If the property so sold was not redeemed within three years from the date of the certificate, then the purchaser became entitled to an absolute deed of conveyance: 2 Bellinger & Cotton, Code, title 30, ch. 6, p. 1054 et seq. Under this state of the law the courts did not favor tax titles: *Noble v. Watrous,* supra.

The object of the law of 1907 and amendments thereto was for the purpose of giving the delinquent taxpayer his day in court and for correcting and straightening out all minor defects and adjusting any controversies that might exist over matters of detail which the taxpayer had no prior opportunity of otherwise having corrected, thus giving the delinquent taxpayer an opportunity to pay his just proportion of the public revenue, or at least of tendering into court what he admits is the amount he should pay for the maintenance of governmental functions. The writer is not aware of any knowledge that is so generally diffused as the fact that property owners must pay taxes. So sure is every one of this fact that taxes and death are the two things considered certain and inevitable.

We do not deem the other questions raised by appellant in its brief as being material or necessary to a proper determination of the issues presented by the pleadings herein. The certificates of delinquency, it appears, cover some land outside the Klamath Irrigation District, and this portion the trial court rightly eliminated. Klamath county being the proper party plaintiff, any question of damages by reason of faulty construction or negligent operation of the canals and ditches cannot be determined in this case, nor are such damages a proper counterclaim or offset to the taxes properly levied after said taxes have been permitted to become delinquent, and the appellant neglecting to avail himself of the remedy provided by statute.

The decree will be modified to the extent of eliminating all penalties and interest on the certificates of delinquency for the taxes for the years 1923, 1924.

With this modification, the decree is affirmed.

BEAN, C. J., BROWN and BELT JJ., concur.