LARAMIE RIVERS COMPANY, a Corporation,
                    *Plaintiff in Error,*

vs.

ELBERT A. WATSON, AXEL GABRIELSON, et al.,
                    *Defendants in Error.*

ELBERT A. WATSON, AXEL GABRIELSON, WIL-
LIAM F. JENSEN,
                    *Plaintiffs and Appellants,*

vs.

CITY OF LARAMIE, WYOMING, a Municipal Cor-
poration, LARAMIE RIVERS COMPANY, a Cor-
poration, PIONEER CANAL COMPANY, a Corpo-
ration, H. N. (NEIL) ROACH, MORRIS E. COR-
THELL, LEWIS J. HOLLIDAY, ANDREW HU-
RICH THEODORE L. JOHNSON,
                    *Defendants and Respondents.*

(Nos. 2474 and 2476; March 18th, 1952; 241 Pac. (2d) 1080)

334

336

For the plaintiffs and appellants, the cause was submitted upon the brief of Bard Ferrall, Ray E. Lee and J. A. Greenwood, all of Cheyenne, Wyoming, and oral argument by Mr. Ferrall.

For the defendants and respondents, the cause was submitted upon the brief of M. E. Corthell and Gordon W. Davis of Laramie, Wyoming, and oral argument by Mr. Corthell, Mr. Davis and Alfred M. Pence of Laramie, Wyoming.

Heard before BLUME, Chief Justice, and CHRISTMAS and HARKINS, District Judges.

340

## OPINION

BLUME, Chief Justice.

This action was commenced on February 23, 1946, by the plaintiffs Elbert A. Watson and Axel Gabrielson on behalf of themselves and others similarly situated against the City of Laramie, the Laramie Rivers Company and its five directors. The Laramie Rivers Company owns a controlling number of shares of stock in the Pioneer Canal Company. It has a board of five directors who are also elected and serve as five directors of the seven directors of the Pioneer Canal Company. Their consent to bring this action in the name of the Pioneer Canal Company could not be obtained and for that reason the Pioneer Canal Company is joined as defendant herein although the action is brought for its benefit. Some other parties joined as plaintiffs. They, however, have not appealed and will not be mentioned further. The pleadings are lengthy. It would serve no good purpose to set them out, except some portions incidentally. The third amended petition was filed June 2, 1947. Issues between the parties were duly joined. A broad, general outline of the case which may aid in more readily understanding the questions involved is as follows:

This case arose by reason of the fact that the City of Laramie in this state, sometimes referred to herein as the city, was short of water. It purchased ten cubic feet of water per second from an early appropriation out of Laramie River, herein called the Dowlin Right, but wanted to take this water out of the river some 25 miles

further up in the stream, namely, at the point where the so-called Pioneer Canal takes its water therefrom. The city further wanted to utilize part of the Pioneer Canal as enlarged—and called Pioneer Canal Enlargement—for a distance of some three to four miles from its headgate to a so-called Sodergreen Lake, use this lake in order to settle the water and take it thence through a pipe line to the City of Laramie. The Laramie Rivers Company along with the Pioneer Canal Company has an interest in the Pioneer Canal Enlargement, that is to say, from its headgate at the river to Sodergreen Lake, so that it was necessary for the city of Laramie to acquire the permission to use that part of the Pioneer Canal above mentioned from both companies. Pursuant to agreement hereinafter mentioned the City of Laramie paid the sum of $12,500.00 for the privilege above mentioned, plus $100.00 per month thereafter for a period of thirty years. These payments were divided as follows: $7,500.00 to the Pioneer Canal Company and $50.00 per month thereafter; $5,000.00 to the Laramie Rivers Company and $50.00 per month thereafter. The foregoing situation gave rise to the contentions herein made by the plaintiffs, namely, first that the city did not pay adequate consideration for the rights which it acquired; second, that the money paid and agreed to be paid was improperly divided between the Pioneer Canal Company and the Laramie Rivers Company. The trial court found against plaintiffs on both of these contentions and they have appealed from that holding.

Interjected into the case by the plaintiffs is another question rather remote from those already mentioned, raised by the second cause of action of the plaintiffs, namely, whether the Laramie Rivers Company, which owns approximately two-thirds of the shares of the stock of the Pioneer Canal Company but which shares are without any water rights, should pay the same assessments that are assessed against those parties who

hold shares of stock with water rights in the Pioneer Canal Company. Plaintiffs contend that it should pay the same assessments. The trial court held otherwise and the plaintiffs have appealed. It is not necessary to decide herein whether or not this cause of action was properly interjected into the case.

Interjected into the case is a further question under an amendment to the second cause of action, namely, whether the judgment rendered herein by the trial court for $16,080.00 against the Laramie Rivers Company by reason of delinquency in assessments of the Laramie Water Company, predecessor in interest of the Laramie Rivers Company, was proper. The amendment to the second cause of action by the plaintiffs was offered, and permitted over objection, shortly before the end of the trial of the case. The Laramie Rivers Company, defendants herein, did not offer any evidence on the point during the trial for the reason, as alleged, that they did not know the facts at that time. A motion to reopen the case and a motion for a new trial to give it an opportunity to offer evidence newly discovered were offered subsequently and overruled by the trial court. From the judgment above mentioned and from the adverse ruling of the trial court on the foregoing motions, the Laramie Rivers Company has appealed by way of petition in error.

These several matters will be discussed more fully hereafter, and for clarity's sake more or less repetition will be unavoidable. A number of matters are mentioned in the briefs of counsel which seem to be of no, or of only minor, importance. That is true, for instance on the question as to whether or not the directors of Pioneer Canal Company were all duly qualified to act as such, in view of the fact that the contract with the city was approved at a meeting of the stockholders. That is true also on the point that at the time of the negotiations between the city and the two companies, the prop-

erty of Laramie Rivers Company had been sold to Albany county for taxes and had not yet been redeemed. Anyone may sell almost anything, even a mere possibility, if he can deliver title when the proper time comes. In order to hold this opinion within reasonable limits, we shall refer only to matters which we deem essential or which we think should be mentioned in order to make the opinion reasonably intelligible.

## 1. ADEQUACY OF CONSIDERATION PAID BY THE CITY.

Plaintiffs in their third amended petition asked that the city be enjoined from interfering with any rights of the Pioneer Canal Company. The city has now expended a large amount of money in constructing a pipe line from Sodergreen Lake to the city, so the foregoing position of plaintiffs has been abandoned, and they now limit their contention to the fact that the consideration paid by the city is inadequate.

Negotiations for the acquisition of the rights here involved by the city began as early as February 16, 1945. On March 5, 1945, the city offered to pay $1200 annually therefor. Meetings were held by the directors and stockholders of the companies involved herein, including joint meetings and including informal meetings with the city officials. A committee was appointed, of which the plaintiff Gabrielson was a member, in connection with the negotiations. Later another committee was appointed, of which both plaintiffs were members, to act for the same purpose. Counter propositions were made. The two companies at one time offered to accept $25,-000.00 in cash and $100.00 per month thereafter. On August 6, 1945, the city increased its original offer to $10,000.00 cash and $100.00 per month to be paid thereafter for the period of 30 years. No effectual progress in the negotiations was made for a long time. So, on August 27, 1945, the city commenced condemnation pro-

ceedings for the acquisition of the rights above mentioned and some additional rights which need not be detailed herein. Thereafter the negotiations with the companies were resumed. The city increased its offer to $12,500.00 cash and $100.00 per month to be paid thereafter for 30 years. At some time during the negotiations, a number of owners of water rights in the Pioneer Canal Company sent a written protest to Roach, the president of the Pioneer Canal Company, and to the city protesting that any contract with the city in connection with the rights herein in question would be illegal. On September 26, 1945, the stockholders of the Pioneer Canal Company approved the contract as finally executed. At that meeting stockholders were present holding 18,361.62 shares of stock. Stockholders holding 15,949.66 voted in favor of the contract; stockholders with 2,411.96 shares voted against it. The Laramie Rivers Company, holding 13,895.3 shares, voted in favor of it. Aside from that stock, the holders of 2,411.96 voted against the contract, the holders of 2,054.36 in favor thereof.

The contract entered into between the city and the Pioneer Canal Company is dated October 1, 1945, and, briefly stated, provides that the Pioneer Canal Company grants to the City of Laramie the right to divert such water, not exceeding 15 cubic feet per second, as the city may lawfully acquire from the Laramie River and divert the water at the Pioneer Canal headgate, transport the same through the Pioneer Canal Enlargement and Sodergreen Lake and deduct this water, less the proper proportion of seepage and evaporation, through a pipe line from the lake to the city. The grant is limited by the provision that "the city's transportation of its water shall not impede nor interfere with the rights of the company to transport water which it or its members or water users may be entitled to transport therethrough;" and "without interference with nor im-

pairment of the rights of the Pioneer Canal and Laramie Rivers Company to transport therethrough such amounts of water as they may be lawfully entitled to transport." Rights of enlargement of the Pioneer Canal Enlargement and of Sodergreen Lake are granted. The city agreed to pay to the Pioneer Canal Company the sum of $7,500.00 in cash and the sum of $50.00 per month for 30 years with a provision for a mutual extension of time, and the right of the city to cancel the contract in 1965. A similar contract was entered into with the Laramie Rivers Company, but providing a cash payment of $5,000.00 and $50.00 per month to that company.

The contention that the amount paid and to be paid by the city is inadequate is in the main based on the theory that when the Dowlin water right of 10 cubic feet per second acquired by the city is taken out of the Laramie River at the headgate of the Pioneer Canal some 25 miles further up the stream, that that is equivalent to depriving the Pioneer Canal Company of 10 cubic feet of water per second. There is testimony in the record—to some extent disputed—that the water at the headgate of the Pioneer Canal was never shut off to supply any of the Dowlin rights, and so it is argued that the return water from that used by the users from Pioneer Canal was always sufficient to supply the Dowlin rights at its original headgate, and that hence, as stated, to take the water out of the stream at the headgate of the Pioneer Canal is equivalent to depriving the Pioneer Canal of that amount of water. The reason, however, that the headgate of the Pioneer Canal was never shut off as above mentioned, may have been that the Dowlin rights were not put to full use. It would seem, however, in view of the laws of nature which water follows, that we must agree with counsel for plaintiffs that there would be at least *some* return water which would supply at least some of the Dowlin rights, and hence it is prob-

able—though the trial court thought otherwise—that at least some of the water right of the Pioneer Canal Company was adversely affected by the transfer of the Dowlin right in the manner herein attempted. But we do not have sufficient information to determine the extent thereof. Howsoever that may be, it is not disputed that the city had the right, under condemnation proceedings, and hence under contract, regardless of any protests, to acquire the right of changing the point of diversion of the Dowlin water right, so that the only question is, or can be, as to the amount of compensation which the city should have paid. In this connection our attention is called to the rule that where one corporation, through its board of directors, or otherwise, as in the case at bar, is controlled by another corporation, the burden of proof is on the controlling corporation to show the fairness of a transaction. Counsel quote, among other authorities, from 19 C.J.S. 169, where it is said: "Where the fairness of the transaction is challenged, there must be an affirmative showing of fairness and good faith, the burden being on the parties seeking to sustain such transaction to prove this by clear and satisfactory evidence, and where a sale is involved, to prove the full adequacy of the consideration; and these rules are particularly applicable where a common director is dominating in influence or in character. In some cases it has been held that such contracts are presumptively fraudulent and invalid, while in others it has been held that no presumption of illegality or unfairness is warranted; but it has been said, however, that the seeming conflict of opinions is not so much a conflict of law as of facts."

The general rule above stated is recognized in Smith v. Stone, 21 Wyo. 62, 128 P. 612, and State Bank v. Haun, 30 Wyo. 322, 222 P. 45. The rule applies generally to transactions between two related corporations. Whether it applies to transactions with a third party—

the City of Laramie in this case—is another question. But for the purpose of this case, we may consider it in weighing the testimony herein.

The witness Gabrielson, plaintiff herein, testified that at a meeting with the city officials "we were discussing back and forth the value of it (the water), the price that we would settle for, and I made the statement that it ought to be $40,000.00; and they wanted to know why and I said that they were paying the Baths $40,000.00 for the priority date, and that we would have to furnish the water." While it is not altogether clear, it would seem, since the talk was of a settlement with the city, that the witness meant that the city should pay $40,-000.00 for the rights which it sought to acquire, the main value of these rights consisting of the water which, as the witness thought, the city would take from the Pioneer Canal stockholders, and perhaps believing that these rights were the exclusive property of the Pioneer Canal Company. As above mentioned, the city agreed, in addition to the cash payments, to pay $100.00 per month for 30 years, or a total of $36,000.00. We think we may leave out of consideration the agreements for earlier cancellation and for extensions of time, since these factors are purely problematical. The $36,000.00 would not, of course, be worth par on October 1, 1945. At the oral hearing we asked counsel for the present value of the sum as of that date, but we failed to receive any response. It would depend, of course, upon what rate of interest or discount would be accepted as satisfactory. High grade bonds, aside from U.S. Government bonds, paid somewhat less than 3% interest; medium grade bonds about $3\frac{1}{2}$% ; high grade preferred stock about 4%. If we may credit the figures given below by the Mutual Life Insurance Company of New York (see page 404 of its book on premium rates and guarantees, July 1921), the present value of $36,000.00 as of October 1, 1945, (based on yearly payments) was

approximately $23,518.00, if we figure 3% discount; the sum of approximately $22,068.00, if we figure 3½% discount; the sum of approximately $20,750.00, if we figure 4% discount. Adding to these sums the cash payment of $12,500.00 would make the actual payments the sum of $36,018.00; the sum of $35,568.00 and the sum of $33,250.00 respectively. Based on monthly payments, these amounts should be quite a little greater. The highest sum here mentioned is not too far apart from the $40,000.00 mentioned by plaintiff Gabrielson. The witness Hurich testified that in his judgment the offer made by the city was a good offer. The witness Roach testified that in his judgment the Pioneer Canal Company would not be hurt by the grant of the rights here involved. Plaintiffs introduced no evidence on the point here involved, aside from that of Gabrielson. In addition to this we must bear in mind that the negotiations above mentioned were carried on for more than six months. Offers and counter offers were made. The city commenced condemnation proceedings. It might have been compelled in these proceedings to pay more than the amount which it finally agreed to pay; or it might have been compelled to pay less. This fact and the lengthy negotiations have an important bearing in determining as to whether or not the transaction has been shown to be fair or unfair. Taking all these various factors into consideration, we think that it is quite plainly evident that we cannot say that the trial court was not justified in holding the transaction to be fair, and that the compensation agreed to be paid by the city was adequate. Its judgment in that connection accordingly must be and is affirmed.

## 2. DIVISION OF COMPENSATION MONEY BETWEEN THE TWO COMPANIES.

It is contended by plaintiffs that the controlling and interlocking directors of the two companies here in-

volved unlawfully and unfairly diverted part of the consideration paid by the city to the Laramie Rivers Company. The trial court did not directly pass on the question which seems to have been an oversight, but it found generally for the defendants and so its judgment may be regarded as adjudicating the point before us against the plaintiffs.

In this connection the rights of the respective companies in Pioneer Canal Enlargement and Sodergreen Lake must be mentioned. Originally and up to 1909 the Pioneer Canal Company was the only party interested in the canal of that company. It takes its appropriation of water directly out of the Laramie River at a point in Section 36, Township 14 North, Range 77 West, in Albany County, Wyoming. It has a lake called the Sodergreen Lake located about three or four miles northeasterly from its headgate. About 1908 the Lake Hattie Reservoir and Irrigation Company was organized. It had a lake called Lake Hattie Reservoir about five miles north of Sodergreen Lake and had an appropriation of 68,000 acre feet of water with a priority of 1908 which was by reason of other prior appropriations a late water right generally called a flood water right. It desired to conduct whatever flood water it could from the Laramie River through the Pioneer Canal to Sodergreen Lake and thence by a supply ditch to the Lake Hattie Reservoir. So on September 13, 1909, it entered into an agreement with the Pioneer Canal Company as party of the first part whereby the former company as party of the second part was granted the right to enlarge the Pioneer Canal from its headgate to Sodergreen Lake, herein called Pioneer Canal Enlargement, reserving to the Pioneer Canal Company, the right to conduct 306 cubic feet of water per second through the enlargement. Section 2 of the contract provides for a grant to the Lake Hattie Reservoir and Irrigation Company in the following terms:

"An undivided interest in the above described portion of said headworks and Canal, as so enlarged, equal to the proportion which the total capacity of said Canal, as so enlarged, over and above three hundred and six (306) cubic feet of water per second shall bear to the total capacity of said Canal, as so enlarged; it being the intent thereof to reserve to the said party of the first part an undivided interest in said headworks and Canal, as so enlarged, equal to the proportion which three hundred and six (306) cubic feet of water per second shall bear to the total capacity of said enlarged canal."

The end of the contract provides: .

"And in consideration of the premises and of the conveyance hereby made, the said party of the second part hereby covenants and agrees that it will keep and maintain the above described portion of said Canal in good order and repair; that it will bear and promptly pay the expense of such enlargement of said Canal as may be undertaken by it and all damage caused thereby, and that it will pay all expense of maintenance and operation of said portion of said Canal."

On November 21, 1911, the Pioneer Canal Company entered into a contract with the Lake Hattie Water Company giving the latter the right to enlarge the Pioneer Canal outside of the Pioneer Canal Enlargement already mentioned. That contract does not seem to have any particular bearing herein.

The rights under these contracts were subsequently acquired by a corporation called the Laramie Water Company which in turn on February 8, 1926, conveyed these rights to the Laramie Rivers Company, a party to the present action, and it was by reason of these rights that the City of Laramie was compelled to deal with both the Pioneer Canal Company as well as the Laramie Rivers Company in order to acquire the right to the use of the Pioneer Canal Enlargement and Sodergreen Lake as hereinbefore mentioned.

As heretofore stated the money paid and to be paid by the city was $7,500.00 cash to the Pioneer Canal Company and $5,000.00 cash to the Laramie Rivers Company, further payments were to be made at the rate of $50.00 each month to each of these companies. The burden of proof that this was a fair division was, according to the rule of law heretofore mentioned, on the Laramie Rivers Company and on its directors who controlled the Pioneer Canal Company. We do not think that this burden has been met. We think the unfairness appears in the record before us. Counsel for the plaintiffs by an ingenious argument attempted to show that the Laramie Rivers Company contributed nothing whatever to the rights acquired by the city. But we think that such is an extreme view of the situation. Under the facts hereinbefore shown the Pioneer Canal Enlargement may be said to be jointly owned by the two companies. It is true that the witness Roach testified (Questions 1462-1463) that the Laramie Rivers Company had not used the enlarged canal for many years, so that it was in the nature of a windfall to be able to get anything for its rights at all, and that fact must be considered in determining the value of the rights with which it parted. There are exceptions, of course, but an unused house, an unused table, an unused stove, an unsued anything else for a period of many years would ordinarily not be considered of any great value. Still it had *some* value. Counsel are not agreed as to the interest of the respective companies in Sodergreen Lake. The map in evidence indicates that none of the flood water rights of the Laramie River (pursuant to the contract of 1909 with Lake Hattie Reservoir and Irrigation Company) would enter the lake but would go round it into the supply ditch which leads to Lake Hattie Reservoir. Counsel for plaintiffs contend that such is the fact. Counsel for Laramie Rivers Company on the other hand argue to us that such flood water would

necessarily go through the lake. We do not know the facts. Whatever may be true as to that, it is quite evident that the interest in the lake on the part of the Laramie Rivers Company is quite small as compared with the interest therein of the Pioneer Canal Company which owns the reservoir.

Furthermore, we have heretofore stated that it is not improbable that the supply of water of the Pioneer Canal Company will be diminished by reason of the acquisition of the rights here involved on the part of the city. In any event that company, and that company alone, takes the risk of such diminution, the amount of which will probably depend to some extent on the available water from time to time. In view of these factors, the court is convinced that the division of the money between the two companies is quite unfair. We have no measuring device by which we can determine the exact degree of unfairness. We are not, however, totally without some guidance. Andrew F. Hurich, a director of both companies, made a motion at a meeting of both companies held on August 8, 1945, to the effect that the city should pay to the two companies combined a sum of $25,000.00 in cash and $100.00 per month during the term of the contract and that "of the cash payment $20,000.00 shall be paid to the Pioneer Canal Company and $5,000.00 to the Laramie Rivers Company." The other directors did not agree, but it shows at least that one of the parties vitally interested in the Laramie Rivers Company thought that that company should have only 20% of the cash money to be paid. It does not appear whether he thought that this should also apply to the monthly payments. It would seem logical, at least, that this is what he meant.

We think we should be somewhat more liberal than Mr. Hurich. But the court is convinced that 30% is the highest percentage to which the Laramie Rivers Company is entitled. By and including April 1, 1952, it will

have been paid the sum of $5,000.00 plus $3,900.00, a total of $8,900.00. It should have been paid under the percentage above stated the sum of $6,090.00 leaving due to the Pioneer Canal Company the sum of $2,810.00. We think it best that payments already made should not be disturbed in so far as requiring the Laramie Rivers Company to directly turn over to the Pioneer Canal Company the excess payments already made, but that the equalization according to the percentage above mentioned should be made out of the payments to be made by the city in the future. All moneys accordingly hereafter to be paid by the city must all be made to the Pioneer Canal Company until the equalization according to the percentage heretofore mentioned has been completed and thereafter the payments to be made by the city must be made at the rate of 30% to the Laramie Rivers Company and 70% to the Pioneer Canal Company. The contract made by the city with the two companies respectively and the judgment of the trial court are hereby modified and corrected to carry out the direction above made.

### 3. ASSESSMENTS ON PIONEER CANAL COMPANY STOCK HELD BY LARAMIE RIVERS COMPANY.

Laramie Rivers Company holds 13,895.3 shares of stock of the Pioneer Canal Company but has no water rights annexed thereto. Notwithstanding that plaintiffs contend that it should pay the same assessments for the maintenance of the Pioneer Canal Company as are paid by those who hold stock with water rights in the canal. In this connection it is necessary or advisable to go to some extent into the history of the holding of the stock in the Pioneer Canal Company and what was done in that connection. An enormous amount of evidence was introduced on the subject, much of it seemingly unnecessarily so. A general survey, with some unimportant

errors, is found in State v. Laramie Rivers Company, 59 Wyo. 9, 136 P. (2d) 487. There is no case on record which presents a state of facts such as found in the case at bar. This case stands unique among the many cases dealing with water rights. So we must cope with the question before us in that light. The only guide we have is the general sense of justice toward all.

The Pioneer Canal Company was organized on March 29, 1879, for the purpose of constructing, maintaining and managing ditches and reservoirs in Albany County, Wyoming, and conveying and distributing water for agricultural and other purposes. It had a capital stock of 1,000 shares of the par value of $10.00 each. It acquired a water right by direct flow as subsequently adjudicated of 71.43 cubic feet per second and 1,000 acre feet of water to be stored in Sodergreen Lake. This right has a priority as of April 19, 1879, and is a first class water right. The company also subsequently acquired an additional appropriation of 210.48 cubic feet per second with a priority as of October 1, 1884. This right is comparatively a late right and is in the nature of what is commonly called a flood water right. The company was reorganized in February 1908, with a capital stock of 21,000 shares of the par value of $10.00 each. It was all issued, it seems, to the Wyoming Central Land and Improvement Company, which had enlarged and improved the canal and had managed it from 1884 to 1909. There is evidence that $240,000.00 had been expended on the canal, against which however only capital stock of $210,000.00 was issued, and if that is correct, the stock was all issued for value. During this time the Pioneer Canal Company had granted what are called deeded rights, consisting of 187.05 acres called the West Laramie rights, and another water right for 510.5 acres granted in 1886. The record does not disclose the terms of these deeded rights.

All of the stock was subsequently transferred, appar-

ently to the Lake Hattie Reservoir and Irrigation Company and was by the latter about November 7, 1911, transferred to the Lake Hattie Water Company. All the certificates of stock then outstanding were called in and new certificates were issued which read as follows:

"CERTIFICATE OF STOCK AND WATER RIGHT

Number.............    State of Wyoming    Shares.............
Capital $210,000                           Shares $10 Each

Pioneer Canal Company

This Certifies that................................................. is entitled

to.....................shares of the capital stock of PIONEER CANAL COMPANY, fully paid and non-assessable, except for expense of maintenance and operation, and transferable only on the books of said Company and in connection with the title to the lands hereinafter described.

This certificate is evidence of the ownership of an undivided interest in all water rights of said Company, in the ratio which the number of shares included in this certificate bears to the total number of shares of capital stock of said Company, and of the right to make an equal use, with other stock holders, of said water rights in the proportion aforesaid, subject, however to the following restrictions and limitations:

1. The said water rights are attached to and are to be used in connection with the following described lands

and none other, to-wit:................................. in Albany County, Wyoming, each share representing a right for one acre of land.

2. The consumer shall receive water at the main canal of said Company through an outlet to be selected and provided, equipped and maintained by the Company at the cost of the consumer, and the water shall be measured in the manner and by the means determined by the Company.

3. The consumer shall be limited to a maximum flow, at the outlet, of one-seventieth (1-70) of one cubic foot per second for each acre of land watered.

4. The consumer shall also be limited to the maximum of two acre feet of water per acre of land watered in any one year.

5. The consumer shall also be limited to the amount of water required and necessary without waste, for the irrigation of said tract of land and for domestic and stock purposes upon the said land.

6. The consumer shall also be limited to his proportion, as above stated, of the water available to the Company from time to time.

7. The consumer shall be liable to assessment in equal proportion with all other stockholders of the Company, to meet the expense of maintenance and operation incurred by the Company from time to time, and all such assessments when made by the Board of Trustees shall become liens upon the stock and the water rights aforesaid which may be enforced by public sale of the stock to the highest bidder, for cash, at the office of the Company, if the owner shall neglect or fail to pay the same upon thirty days notice.

8. This certificate shall be transferable apart from the title to the land above described, only with the consent of the Board of Trustees of the Company, and upon the observance of such other conditions as are or may be imposed by law.

9. This certificate and water right shall be subject to such other and further regulations and conditions as are or may be made from time to time in the by-laws of said Company, provided, that such regulations and conditions shall not discriminate in substance between the different shares or rights in the Company, but shall secure proportionately equal rights and benefits to all as nearly as practicable. All certificates may be called in at any time by the Board of Trustees, and certificates issued in lieu thereof in such form as may be prescribed by the Board.

IN WITNESS WHEREOF, the duly authorized officers of the corporation have hereunto subscribed their names and caused the corporate seal to be hereunto affixed, at_____this_____day of_____, A. D. 191_____."

Judging from the form of this certificate, it would seem that the owners of the stock evidently thought that they would at some time be able to dispose of all of the stock, all of which would carry with it an equal water right, thus irrigating 21,000 acres of land. Whether that was due to the dream that the 210 cubic feet of water with a priority of October 1, 1884, was in fact a first class right, when in fact it was but a flood water right, or whether it was due to the thought that all the rights should be supplemented by water from the Lake Hattie Reservoir, we do not know. In any event experience made wiser men. The effect of diluting the water right here involved by spreading it over 49,000 acres of land is clearly shown in State v. Laramie Rivers Company, supra. To attempt to spread it over 21,000 acres would, as shown by the testimony herein, be equally disastrous. While the form of the certificates was never changed, the Lake Hattie Water Company, as well as its successor in interest in fact created two classes of stock, one class of which carried with it a water right with a description of the land to be irrigated, while the remaining stock carried no water right and no description of the land to be irrigated.

Commencing about 1912, the Lake Hattie Water Company, or those who controlled it, commenced to sell some stock with a water right at $12.00 per share to various individuals, a contract for part of which had apparently been made previously. Each share of stock carried with it a water right to irrigate one acre of land, and it seemingly was intended that the amount of water that should go with each share of stock should be rea-

sonably sufficient to irrigate the land. The stock remaining in the hands of the Lake Hattie Water Company passed into the hands of the Laramie Water Company in 1918 or 1919 and that company continued to sell some of the stock with a water right in the same manner and under the same conditions under which water rights had been sold by the Lake Hattie Water Company, except that some of the stock was sold for $20.00 per share. It seems that this course continued until about 1920, except that seemingly some such stock was issued to one Billup, and possibly to some other person (the record is confusing) as late as March 15, 1926, to fulfill previous contracts made with the Laramie Water Company. In 1926 the Laramie Rivers Company decided that no more stock with water right should be sold. An exception was made in 1935 as to a very few shares, apparently under special circumstances. It would be well to have an idea of the approximate number of water rights outstanding. We have not been able to ascertain from the record in this case the total number of shares of stock which have water rights annexed thereto. In State v. Laramie Rivers Co., supra, the number appears to be 6814 shares. To determine the number of acres irrigated, we must add the deeded rights. With these added, the total number of acres irrigated would be a little over 7500.

It would be profitless to trace the devolution of ownership of the stock which was issued without a water right, except to say that of that stock 13,895.3 shares are held by the Laramie Rivers Company and were bought from the Laramie Water Company about February 26, 1926.

The witness C. E. Fey testified (Q. 894) that the Laramie Water Company prior to the year 1925 paid assessments of 20c a share along with the water users. However at another place (Q. 844), he stated that the assessments "were paid by the users of water with

*some* payments by the Laramie Water Company." The affidavit of M. E. Corthell, in connection with the motion for a new trial, stated that one Buntin, who then apparently controlled the Laramie Water Company up to the time of his death in 1922, contributed toward the expenses of the upkeep of the Pioneer Canal system only when the assessments against the water users were insufficient for that purpose. These limited payments made by those who controlled the Pioneer Canal Company foreshadow the attitude taken by the Laramie Rivers Company in 1926 when it decided that no more water rights should be sold. That company paid no assessments on its stock (which was true also as to the 395 shares without water rights which were held by the Wyoming Central Land and Irrigation Company). Up to 1933 the levy of assessments so far as the books are concerned was made against all the shares with the understanding, however, that the assessments should be collected only from those who held water rights. After 1933 the levy entered on the books applied only to the latter.

As heretofore stated, plaintiffs contend that the Laramie Rivers Company should pay assessments on the stock of the Pioneer Canal Company held by it the same as are paid by the stockholders with water rights. Appeal is made to the fact that previously assessments were paid by all these stockholders. But the situations were somewhat different. It is not surprising that while the owners of stock without water rights were selling some of their stock at $12.00 or $20.00 per share or had expectations thereof, they should deem it advisable to contribute to the upkeep of the Pioneer Canal Company system, since their expectations of sales might otherwise become abortive. But, as already stated, it was definitely decided in 1926 not to sell any more water rights, which changed the whole situation. Only the holders of stock with water rights received any benefits

from the assessments. The Laramie Rivers Company received none, and the trial court evidently applied the common-sense rule that no person should be compelled to pay out money unless he receives something in return. It is true that part of the certificates of stock issued provide that "the consumer shall be liable to assessment in equal proportion with all other stockholders of the company to meet the expense of maintenance" etc. Plaintiffs contend that this means that all stock must pay assessments and that the holders of stock are bound by that provision. But the certificates also provide: "This certificate is evidence of the ownership of an undivided interest in all water rights of said company * * * and of the right to make an equal use with other stockholders of said water rights" etc. That provision is inconsistent with the interpretation of plaintiffs placed on the clause first quoted. The whole certificate breathes of equality and that equality was destroyed when two classes of certificates came into existence, one with and the other without water rights. It would doubtless have been better if the classification, including changes in the certificates, had been made by formal action. But the plaintiffs and persons similarly situated receive, we think, the principal benefit of such informal action, so that they are not in a position to complain thereof.

Counsel for plaintiffs rely upon the provision of § 24-420, Wyo. Comp. Stat. 1945, from which they quote the following: "Companies, associations, or corporations operating or controlling irrigation systems, ditches or reservoirs or other devices for the distribution of water for irrigation shall be authorized to levy and collect such reasonable and necessary assessments for the cost of operation, maintenance, repairs and improvements of such irrigation systems, ditches or reservoirs, and for the purpose of repaying money borrowed for such purposes, as may be authorized by a majority

of the members of such companies, or associations, or fixed in the manner provided by the by-laws of such corporation." But that statute contemplates that parties subject to assessments have water available for their use as may be noted by the following provision: "Payment of such assessments shall be the necessary requisite for the use of such reservoirs, irrigation systems or ditches for the storage or conveyance of water for the lands deeded or described in contracts for or deeds to proportionate interest in such reservoirs, irrigation systems and ditches upon which assessments are made, * * * This act (section) shall include all lands under any of the above named systems if water has been used or is being used in any one irrigation season and providing that water is in said canal, reservoir or ditches, subject to use of owners." It would seem to be clear that this statute has no bearing in the case at bar. Counsel also call our attention to State Ex Rel. Avenius v. Tidball, 35 Wyo. 496, 252 P. 499, Bench Canal Co. v. Sullivan, 39 Wyo. 345, 271 P. 221, Klamath County v. Colonial Realty Co. 139 Ore. 311, 7 P. (2d) 976. But in these cases water for use was available to the parties assessed. There was none in the case at bar. The case of Watson v. Santa Carmelita Mut. Water Co., 58 Cal. App. (2d) 109, 137 P. (2d) 757, was an entirely different kind of case from the case at bar. It was an action to enjoin the collection of assessments on the ground that the seller had fraudulently represented "that payment of no assessments would ever be required, but only the charges for the water used on the lot purchased." Thus it seems that water was available for the lot purchased by plaintiff. Besides there was an express statute forbidding the creation of more than one class of stock.

Counsel for appellants say that as long as the Laramie Rivers Company controls the Pioneer Canal Company, it should pay assessments. They cite us to the fact that it determined the division of money paid by

the City of Laramie as heretofore mentioned. But that was an isolated instance not likely to occur again. We have corrected whatever unfair advantage it gained, and courts would deal likewise with any other unfair advantage. The truth is that for this court to hold that Laramie Rivers Company must pay assessments as plaintiffs contend would be the equivalent of cancelling its shares of stock, for no one in his right senses would pay or continue to pay such assessments when no benefit of any kind is received. We know of no authority which would give us the power to cancel stock which was issued for value received and no authority has been cited to us. It is true, of course, that it is anomalous that parties having the least interest in the Pioneer Canal should be in position to control it. That is what makes this case unique, but does not warrant us to adopt the policy of destruction advocated by plaintiffs.

The situation of the shares of stock held by the Laramie Rivers Company was considered in State v. Laramie Rivers Company, supra. The soundness of what we said in that case has not been questioned. We called attention to the general principle, citing many authorities, that a water company has no right to attempt to sell more water than is available, and what is true of the company itself is, of course, true of those who hold controlling shares therein. Almost all the water rights sold in the case at bar have been held for thirty years or more. The record indicates they were sold on the theory that the water users buying the right were to have a reasonably dependable supply of water. It would be unjust to the present water-right holders in the Pioneer Canal Company to dilute their rights by the selling of any more shares of stock when the water actually available is barely sufficient for the present holders of water rights. And it is quite clear that the Laramie Rivers Company recognized and acted upon this principle when it decided in 1926 that no more water rights should be

sold. It acted fairly and solely in the interest of the water right holders in the Pioneer Canal Company. These water right holders are primarily and above all interested in the fact that their water rights should not be diluted. That having been conceded to them, and having been granted a decidely preferred status by those who held a controlling number of shares in the company, plaintiffs now seek to deprive the latter even of the little right that is left them, forgetting the fact that originally all shares of stock stood on an equal footing and that full value had been paid for them. It irks plaintiffs to be dominated by Laramie Rivers Company. They think that that is an injustice, but after all their position is no different than would be the controlled position of the holders of the West Laramie and other deeded rights in relation to the water right holders in the Pioneer Canal Company, if the Laramie Rivers Company stock were eliminated. The holders of these deeded rights appear to have been given no voice whatever in connection with the affairs of the Pioneer Canal Company in which they have no little interest. They have been overlooked. For the controlling stockholders to act as a protector for all, may not be as unjust as plaintiffs think.

We held in State v. Laramie Rivers Company, supra, that 71.43 cubic feet per second of water (and that is true of the storage water) should not be diluted further as already heretofore mentioned. But there is still some disposable water if anyone would want it, of the 210 cubic feet of flood water right, since 210 cubic feet at the rate of one cubic foot for 70 acres would irrigate some 14,000 acres of land. If such surplus flood water could be sold—and Mr. Corthell of counsel thought it can—it should, of course, be done subject to existing water rights. If we may suggest a proper method, it should be sold, if at all, not by way of stock held by the Laramie Rivers Company but by Pioneer Canal Com-

pany itself, the proceeds to be divided according to the holding of stock by the respective companies and the Pioneer Canal Company being properly compensated for maintaining the system through the years, for without such maintenance no sale would be possible. It accordingly appears that the shares of stock held by the Laramie Rivers Company may have some potential value, so that we think no court would have the right to cancel it or to make any orders which would be equivalent thereto. If and when it appears that the possible potential value no longer exists, the problem here involved would naturally solve itself. The judgment of the trial court in connection with the assessment must accordingly be affirmed.

## 4. JUDGMENT AGAINST LARAMIE RIVERS COMPANY FOR $16,080.00

The trial of this case began on March 17, 1948. On Thursday, March 20, the witness Holliday, upon examination by the plaintiffs, testified to some unpaid assessments on shares of stock of the Pioneer Canal Company. He stated that the books of the company showed unpaid assessments totaling $14,131.10. "Q. Now does any part of this fourteen thousand or so dollars of delinquency on stock represent assessment on stock of the Pioneer Canal Company held by Laramie Water Company prior to the transfer thereof to Laramie Rivers Company? A. Yes, there is an account against the Laramie Water Company of something over $6,000.00." That appears to be the only evidence on the point, if it is evidence. We have made a search of the voluminous record before us to find any minutes of the meetings of the directors of the Pioneer Canal Company, or any other books of the company that might verify the testimony of Holliday, but our search has been in vain. Nor does the record disclose any admission of such indebtedness on the part of either the Laramie Water Company or the

Laramie Rivers Company. Thereafter on Monday, March 24, 1948, plaintiffs asked to amend the second cause of action by alleging that they should recover judgment for $6,000.00 from the Laramie Rivers Company with interest at 7% per annum and stating further "that the collection of said sum with interest was the duty and obligation of said defendant directors and said defendant directors have, while knowing of said debt, concealed said delinquency and that said sum was due and owing as aforesaid from (to?) the plaintiffs and all other stockholders of Pioneer Canal Company similarly situated." Defendants other than the City of Laramie objected to the amendment, but the court allowed it, over exception. The judgment herein was filed on April 22, 1949, allowing judgment against the Laramie Rivers Company for $16,080.00 upon the amendment so made, holding that the amendment was made to conform to the proof in the case. A motion to reopen the case because of newly discovered evidence was filed April 22, 1949. On May 2, 1949, a motion for a new trial on the same matter was filed; both motions were supported by affidavits and the motion for a new trial was also supported by depositions. The trial court overruled these motions and the defendant, the Laramie Rivers Company, has brought this matter here by petition in error.

It was claimed in these motions (which will not be considered separately) that instead of the Laramie Rivers Company owing anything to the Pioneer Canal Company, the reverse is true. The evidence shown by affidavits and depositions is lengthy. We are not certain that we understand all of it. But we shall endeavor to condense the substance thereof, which reduced to its narrowest compass, is as follows:

Mr. Holliday, a director of both companies, knew nothing of the assessments against the Laramie Water Company personally; nor did any of the other of the controlling or interlocking directors. Holliday did not

become manager of the Pioneer Canal Company until 1932 and he apparently did not know of any assessments as above mentioned until about 1938 when he compiled data on the ledger of the company. If any such assessments were due at all, it was by reason of an entry apparently made on the journal of the company by C. E. Fey, then manager of both companies, in 1925. At that time James E. Caldwell of Nashville, Tenn., had the controlling interest in the Laramie Water Company. Caldwell wrote to Fey that he would pay no further assessments, and for him, Fey, to raise the assessments (meaning apparently the assessments on water rights) from 20c to 50c per share. Fey did this evidently without any vote of directors, but simply in accordance with the direction of Caldwell and he also entered on the books, following the method previously pursued, but evidently contrary to the direction of Caldwell, an assessment against the shares of the Laramie Water Company of some $10,500.00, which, if paid, would have exceeded the amount of necessary expenses by $6,-605.46, which itself would ordinarily be unusual and which it seems would show that Caldwell had no assessment against the Laramie Water Company in mind when he gave his direction to Fey. Furthermore, the statement attached to the affidavits shows that the Pioneer Canal Company is indebted to the Laramie Rivers Company in the sum of $3,572.44 aside apparently from $593.08 for taxes paid. Again it appears that when Caldwell got tired of holding the stock of the Laramie Water Company in 1925, he entered into negotiations with N. E. Corthell, who acted for the Laramie Rivers Company in that connection. Corthell asked Fey to submit to him a statement of the indebtedness and the credits of the Pioneer Canal Company and the Laramie Water Company. A copy of the statement submitted by Fey is before us. It does not disclose any indebtedness due from the Laramie Water Company. Corthell,

on behalf of the Laramie Rivers Company, acted upon that statement in purchasing the rights of the Laramie Water Company, so that it would seem that the Laramie Rivers Company had no knowledge of such indebtedness at least at the time when it made its purchase from the Laramie Water Company.

This state of facts, if true, impresses us. We might feel that the trial court was justified in ignoring it, if the evidence of the indebtedness herein in question adduced by the plaintiffs had been clear and decisive. We do not think that to be true. When a man comes into possession of the books of a corporation and knows nothing of what had been done previously and merely states that he has found an entry on the books, twenty-three years old, of an indebtedness due from another without more, and without producing the books, without showing who made the entry or that the entry was made in the regular course of business, and without producing any evidence of the legality of the entry, if that is involved, then we think that the testimony is neither clear nor decisive. Many persons or corporations might, we fear, find themselves bankrupt if they were compelled to pay charges of indebtedness against them made twenty-three years or any number of years previously on the books of someone else, if the sole and only evidence in that connection is that some person without knowledge of the facts states that he found an entry of such charges on the books. Entries on books can be made easily. See 32 C.J.S. 552 and subsequent pages. We shall not inquire as to whether or not the indebtedness, twenty-three years old, is barred by limitation, but the age itself of the entry would in any event require, or at least make advisable, a careful investigation thereof. The fact that the holders of water rights paid the assessment of 50 cents per share in 1925 in no way estops the Laramie Rivers Company from questioning the validity of the assessment in that year in so far as its

duties are concerned. The testimony of Holliday was introduced on Thursday, March 20. We hardly think that defendants were required to anticipate at that time that the plaintiffs would attempt to amend their petition, based on that testimony. The second cause of action of plaintiffs was based on the non-payment of assessments by the Laramie Rivers Company since 1926. The amendment to that cause of action, even if it can be said to be somewhat germane to the second cause of action, was at best only remotely so. An indebtedness due from a defendant by reason of the non-payment of assessments since 1926 was quite different from the question as to whether or not it was liable for an indebtedness due from the Laramie Water Company. The amendment was not actually offered until Monday, March 24, two days before the end of the trial. C. E. Fey, who knew most or all of the facts, was then available as a witness. The defendants were then engaged in introducing an enormous amount of evidence on other points, and we hardly think that it would have been fair to have required them at their peril to have discovered that Fey was in possession of all the facts and have him testify thereto during the trial, when as Fey himself stated, he did not have the facts, then twenty-three years old, in mind until the details later discovered were called to his attention.

Furthermore a personal judgment was given against the Laramie Rivers Company. We held in Lingle Water User's Assn. v. Occidental Building & Loan Assn., 43 Wyo. 41, 297 P. 385, in which the fundamental principle involved was considered thoroughly, that one who is an assignee of a water right—in that case evidenced by shares of stock—on which past assessments are due is not personally liable for such past assessments, unless, of course, expressly assumed. There is no evidence in this case that the Laramie Rivers Company assumed any indebtedness of the Laramie Water Company. The

rule of that case should apply even more to a case such as that at bar. It would seem to follow that the purchaser in this case, namely, the Laramie Rivers Company, was under no duty to collect delinquent assessments so as to make it personally liable, since otherwise the rule of the foregoing case would have no meaning. See also Cabell v. Federal Land Bank of Spokane, 173 Ore. 11, 144 P. (2d) 297, and Model Water and Light Company v. Dickson, 174 Wash. 164, 24 P. (2d) 422, both of which cases follow and approve our own case above mentioned. Counsel for plaintiffs, however, seem to think that because directors occupy a fiduciary relationship, therefore it follows that the party who or which elected them is responsible for all their actions and non-actions; in other words that the fiduciary relationship extends to the latter. Suppose that a private individual, instead of the Laramie Rivers Company, had bought a controlling number of shares in the Pioneer Canal Company and so had cast his vote for the election of the five directors of that company. He himself as stated above, would not be personally liable for the collection of the delinquent assessments against the stock. Should he, nevertheless, be indirectly personally liable because the directors elected by him did not collect them? Does a man owning a controlling number of shares in a corporation cast his vote for directors at his peril, making himself responsible for all their acts or failure to act? If so, then it would seem that no one can afford to own a controlling number of shares in a corporation, and what is true of an individual, would seem to be true of a group acting in concert. It is stated in 18 C.J.S., § 581, 1307, that "it is held that a corporation merely owning all, or practically all, of the stock of another corporation is not liable for the acts or obligations of the latter corporation." It would seem to follow as a logical conclusion that what is true for the "latter corporation" would ordinarily, at least, be true as to the

latter corporation's directors. Since a corporation which owns a sufficient number of shares to control another corporation usually elects the directors of the latter, the next logical conclusion would seem to be that the mere fact of electing such directors would not lead to any personal liability such as plaintiffs claim herein.

Furthermore counsel for plaintiffs apparently seem to think that the minority directors of the Pioneer Canal Company had no duty or responsibility whatever, even though they could have had the same knowledge as the majority of the directors and could have insisted on taking some action. Counsel seem to think that all the duty and all the responsibility rested on the majority and interlocking directors. These controlling directors were, of course, required to act fairly as already heretofore stated, but whether the responsibility was as great as seemingly contended is another question. If it is, and without any right to rely on any limitation of action for negligence, then, of course, it would seem to behoove the Laramie Rivers Company to consider as to whether or not it can any longer afford to vote for persons who control the directorate of the Pioneer Canal Company. However that may be, it is quite certain, we think, that the majority of directors were not required to attempt to collect an illegal assesment, and it would seem that if the Laramie Rivers Company was an innocent purchaser without the knowledge of the indebtedness due from the Laramie Water Company, its stock would even be free from any lien, if there was a lien. 53 C.J.S. 859.

After careful consideration and deliberation, the court is of the opinion that the point here involved should be litigated fairly and fully. The judgment of the trial court in this connection is accordingly reversed and the cause is remanded to the district court of Albany county, but on that question only, for a new trial.

TO SUMMARIZE:

The judgment of the trial court herein is affirmed except as herein stated otherwise. It is affirmed in holding and adjudging that the city paid adequate consideration for the rights which it acquired and which are mentioned in the contracts with the Pioneer Canal Company and the Laramie Rivers Company. It is also affirmed in holding and adjudging that the shares of stock of the Pioneer Canal Company held by the Laramie Rivers Company, which have no water rights connected with them, are not and have not been assessable for the maintenance of the Pioneer Canal Company. The judgment of the trial court is modified in that it must contain, and is hereby held to contain, a provision which overrides any other provision to the contrary, that the compensation paid by the City of Laramie for the rights acquired by it, has not been fairly divided between the Pioneer Canal Company and the Laramie Rivers Company, but should be divided as heretofore mentioned, and the contracts with the City of Laramie in connection herewith should be and are modified in accordance herewith and the City of Laramie is hereby directed to make future payments to the respective companies as heretofore stated. The judgment of the trial court is reversed in rendering judgment for $16,080.00 against the Laramie Rivers Company and the cause is remanded for a new trial on that point as heretofore mentioned. The trial court is authorized and directed to make such additional order or orders herein, not inconsistent herewith, as may be deemed proper or necessary to carry out the provisions of this opinion into full effect. The costs in this court will be equally divided between the plaintiffs and the defendants respectively, but no costs will be taxed for the briefs.

CHRISTMAS, District Judge, and HARKINS, District Judge, concur.